## THE STATE OF NEVADA, Appellant, v. THE FIRST NATIONAL BANK OF NEVADA, Respondent.— Case No. 1.

NOTES AND COUNTY WARRANTS TAXABLE. Notes and county warrants are property subject to taxation under the revenue laws of the State.

MONEY AT INTEREST, ETC., TAXABLE. All money at interest secured by mortgage or otherwise, is subject to taxation without regard to the situation of the mortgagee, whether he be solvent or otherwise, in debt or out of debt.

POWER OF STATE TO TAX NATIONAL BANKS. The State may impose a tax upon the real estate and shares of National banks within its limits; but Congress has reserved to itself the exclusive power over the taxation of the banks and bank property of other descriptions.

THE SAME. Ordinarily the State has the right to tax all property situate within its territorial limits; but it has no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operation of constitutional laws enacted by Congress.

THE SAME. Congress having pointed out a method by which the real estate of the National banks within any State may be taxed, and also the method of taxing their stock, the States are excluded from all other methods of taxation on the bank property.

NATIONAL BANK NOTES, ETC., NOT TAXABLE BY STATES. The notes, bills, bonds, etc., of the National banks are the commodity in which those banks deal in the ordinary course of their business, State taxes upon them are State taxes upon the business of the banks, and such taxes the State cannot impose.

APPEAL from the District Court of the Sixth Judicial District, Lander County.

This was a suit for taxes against the First National Bank of Nevada, and its real estate and improvements in Lander County, and the possessory claim thereto, described as lot six in block twelve, in the city of Austin. The assessment, as stated in the opinion, was made from a written statement furnished by the agent of the defendant to the Assessor; and it was equalized at those figures by the Board of Equalization of Lander County, before which the defendant by its agent duly appeared.

*Robert M. Clarke*, Attorney General, for Appellant.

The Court below found that the defendant was indebted on account of its bank notes in circulation in an amount greater than, $78,500. It also found that the defendant appeared before the

Board of Equalization and demanded to have the amount of its indebtedness on account of its notes in circulation deducted from the $75,000 money at interest, etc., and $3,500 Lander County scrip, which claim was disallowed by the Board, and from these facts it found as a conclusion of law, that the defendant was not liable for the tax levied and assessed against the $75,000 money at interest, etc., and the $3,500 Lander County scrip, and ordered judgment accordingly.

### I.

The action of the Board of Equalization in determining the defendant's complaint and denying its demand to have the valuation of its property for taxation reduced, was final. (Statute of 1864–5, 279, Sec. 15.) It is not a valid defense to an action to enforce the payment of taxes that the property was valued too high, or that the Board of Equalization refused to make deductions from the amount assessed for taxation. (Ib., Sec. 32.) The Board of Equalization having acted, and its action being *final*, the defendant cannot transfer the controversy to and reopen it in the Courts. Its only remedy was by *mandamus*.

### II.

The notes of the bank in circulation do not constitute an indebtedness within the meaning of the State revenue law, but are money, and as such liable to taxation. (Statutes of 1864–5, 274, Sec. 5. Constitution, Art. VIII, Sec. 6.)

### III.

Granting that the bank was indebted on account of its notes in circulation, the indebtedness was not of the same character as that due and assessed to the bank, and could in no sense be deducted from or set off against it. (Statutes of 1864–5, 274, Sec. 6.) No deductions are allowed against " money at interest secured by mortgage or otherwise." It is only against solvent debts other than those specifically enumerated in the statute, that deductions are allowed, and then only when the indebtedness is of the same character as the debts taxed. (Statutes of 1864–5, 274, Sec. 5.)

*George S. Hupp*, for Respondent.

Under the Revenue Act of 1865, (Statutes of 1864–5, 274, Sec. 5) and under the Act of Congress entitled, " An Act to provide a national currency secured by a pledge of United States bonds," approved June 3d, 1864, the promissory notes of the respondent, assessed at $75,000, were exempt from taxation.    The tax upon these notes was unconstitutional.    (*M' Culloch* v. *State of Maryland et al.*, 4 Wheaton, 316 ; *Bank of Commerce* v. *N. Y. City*, 2 Black, 620, and cases therein cited ; *Bank Tax Case*, 2 Wallace, 206.)

By the Court, BEATTY, C. J.

This was an action brought by the State of Nevada to recover from the defendant a certain amount alleged to be due under the State and county assessment for taxes in the year 1866.

There was assessed to the defendant for that year for pos-

sessory claim to real estate and improvements thereon.. $9,000

For Furniture and Assaying Apparatus . . . . . . . . . . . . . . .     3,000

For Promissory Notes bearing interest and secured by

mortgage and otherwise. . . . . . . . . . . . . . . . . . . . . . . .    75,000

County Warrants, or Scrip . . . . . . . . . . . . . . . . . . . . . .     3,500

The Court below held that the bank was liable for taxes on the first two items, and gave judgment accordingly.    As to the remaining items it was held that the defendant was not liable to the payment of taxes.    From this judgment the State appeals.    It is claimed that the defendant is exempt from taxation on these items on two distinct grounds.    First, that the outstanding notes of circulation of the bank are liabilities which should be deducted from the notes and mortgages due to the bank, and only the difference (if there should be a balance in favor of the bank) subjected to taxation.    Second, that a tax on these choses in action would be a tax on the business of the bank, and is therefore in conflict with the Act of Congress granting the charter.

The Constitution provides for the passage of laws which shall secure a just " valuation for taxation of all property, real, personal, or possessory, except," etc., etc.    The revenue law passed under that Constitution, in defining personal property, says it should in-

The State of Nevada *v.* The First National Bank of Nevada.

clude, among other things, " all money at interest secured by mortgage or otherwise.". And so, " all capital loaned, invested, or employed in any trade, commerce, or business whatsoever." Notes and county warrants are certainly property, and both certainly included within the definitions just quoted from the revenue law. But there is in the same section of the revenue law also this description of another species of property : " *Solvent debts, other than those mentioned in this section,* where the amount exceeds the same character of indebtedness of the party assessed." It is claimed by the respondent that this last clause somehow or other connects itself with the first quoted, and if a party loaning money at interest, secured by mortgage or otherwise, owes an amount of debts equal to the mortgage debt due to himself, he may offset the one against the other, and thus escape taxation.

We do not so read or understand the law. All money at interest, secured by mortgage or otherwise, is subject to taxation, without regard to the situation of the mortgagee. Whether he be solvent or insolvent, in debt or out of debt, the money so secured is subject to taxation. It is only *debts other than those mentioned* in the section referred to, which are subject to be balanced by debts on the other side. The language of the Act is very plain. Nor is there anything unreasonable in the distinction. A man who buys a house on credit has to pay taxes on it, just as he who owns a house and is out of debt. Whilst the law justly declares that notes of the character described shall be held and treated as property, perhaps there is no impropriety in holding unliquidated debts and balances as too unsubstantial to be so held or treated. The question, however, whether the Legislature has the power to say that unliquidated debts and balances shall be exempt from taxation, where the party to whom they are due owes an equal or greater amount, is not now before us, and. need not be decided. That the law may provide for taxing notes, bonds, or other evidences of debt, regardless of the pecuniary liability of the holder of such instruments, we have no doubt.

The other question is a grave one, and requiring due consideration. In the case of *M' Culloch* v. *State of Maryland et al.,* (4 Wheaton, 316) Chief Justice Marshall, in an opinion concurred in

by the entire Supreme Court, held that the State could not impose a stamp tax on the notes of the United States Bank, issued by a branch located in Maryland. Whilst the points involved are argued at length, and with an ability which perhaps no other man in the nation could have displayed, the result is summed up in a few short paragraphs.

" The Court has bestowed on this subject its most deliberate consideration. The result is a conviction that the States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the General Government. This is, we think, the unavoidable consequence of that supremacy which the Constitution has declared.

" We are unanimously of opinion that the law passed by the Legislature of Maryland, imposing a tax on the bank of the United States, is unconstitutional and void.

" This opinion does not deprive the States of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with the other real property within the State, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution in common with other property of the same description throughout the State. But this is a tax on the operations of the bank, and is consequently a tax on the operation of an instrument employed by the government of the Union to carry its powers into execution. Such a tax must be unconstitutional."

In the case of *Osborn* v. *United States Bank*, (9 Wheaton, 738) the same Court decided that the State of Ohio could not impose a license tax on the business of a branch of the bank situated in that State. In the opinion in this latter case appears the following paragraph :

" It will not be contended that the directors or other officers of the bank are officers of the Government. But it is contended that, were their resemblance to contractors more perfect than it is, the right of the State to control its operations, if those operations be necessary to its character, as a machine employed by the Government, cannot be maintained. Can a contractor for supplying a

military post with provisions be restrained from making purchases within any State, or from transporting the provisions to the place at which the troops were stationed ?   Or can he be fined or taxed for doing so ?   We have not yet heard these questions answered in the affirmative.   It is true that the property of the contractor may be taxed, as the property of other citizens ; and so may the *local property of the bank.*   We do not admit that the act of purchasing, or of conveying the articles purchased, can be under State control.''  We have italicized a few words in this latter paragraph to call attention to the particular point stated.

In the first case, then, it is expressly stated that the real estate of a United States bank, situate within one of the States, may be taxed as other real estate.   So in the latter case, *the local property of the bank* is held to be subject to taxation.   Now I apprehend that local property includes not only real estate, but all tangible, visible property, whether movable or immovable.   For whilst real estate is the only species of property which is immovable, yet personal property has a location for the time being wherever it happens to be.   It can hardly be questioned that a State has the same right to tax a house or flock of sheep within its jurisdiction that it would have to tax a piece of land.   Although in the first case the learned Judge only speaks of the right of a State to tax the real estate of the bank within its jurisdiction, and the shares or interest held by citizens of the State in the bank, we cannot conceive that he meant to convey the idea that any species of personalty owned by the bank, and within the limits of the State, would not be subject to taxation.

We can see no possible distinction between the two.   And the language used in the case of *Osborn* v. *The Bank*, would strongly indicate that the Court did not intend to make any.   The declarations, however, of the Court in regard to both real estate and local property are mere *dicta*.   The Court was not deciding on the legality of a tax on either.   But notwithstanding these were only *dicta*, still they were so intimately connected with the subject under consideration, and must of necessity have received such deliberate consideration of the Court, that we might almost consider them as the settled law at that time.

If the States, then, had the right to tax the local property of the United States Bank and its branches, it was either an absolute right or it was one determinable at the will of Congress. If that right was absolute, then the same right exists now to tax the local property of National banks, for there has been no constitutional amendments to affect this question, and we can see no difference in this respect between the present National banks and the old United States Bank. If such power did exist, but subject to be abrogated by Act of Congress, the question arises, has Congress deprived the States of the power to exercise this right?

It is claimed that three provisos attached to the forty-first section of the Act of Congress, approved June 3d, 1864, in regard to National currency, etc., do abrogate this power in the States if it ever existed. Those provisos are as follows:

" *Provided*, That nothing in this Act shall be construed to prevent all the shares in any of the said associations, held by any person or body corporate, from being included in the valuation of the personal property of such person or corporation in the assessment of taxes imposed by or under State authority at the place where such bank is located, and not elsewhere, but not at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State. *Provided further*, That the tax so imposed under the laws of any State upon the shares of any of the associations authorized by this Act, shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the State where such association is located. *Provided also*, That nothing in this Act shall exempt the real estate of associations from either State, county, or municipal taxes to the same extent, according to its value, as other real estate is taxed."

By the laws of Congress as existing when this Act was passed, all United States bonds and other securities for money raised by the Government were exempt from taxation. The capital of the banks which were being authorized by this Act was to be composed mostly of United States bonds. Consequently, without some special legislation on the part of Congress, the banks would be free from taxation to the extent of that part of their capital thus invested. (See *Bank of Commerce* v. *New York City*, 2 Black,

620, and Bank Tax case, 2 Wallace, 206.) So, too, as the shares of the stockholders only represented the aggregate property of the bank, if an attempt were made to tax the shares, each stockholder might claim that his shares were free from taxation in proportion to the amount of bank capital invested in United States bonds. To illustrate : If ninety per cent. of the bank capital was composed of bonds, then one holding a $100 share in the bank would only be liable to pay taxes on $10 of this share, the other $90 being exempt on the ground that it was merely the representative of or substitute for $90 of United States securities. (See minority opinion in *Van Allen* v. *The Assessor*, 3 Wallace, 588.)

To avoid any question as to the power of the States to tax these shares, and to confer that authority on the States as far as practicable, was the object of the first proviso. The second proviso is a mere limitation on the extent of power conferred in the first. The majority of the Court in the case of *Van Allen.* v. *The Assessor*, just referred to, hold that under this Act of Congress the States have a right to tax the shares of the bank, and seem clearly enough to intimate that without it no such right would have existed. They admit that the United States cannot confer on the States authority which does not belong to them as such. But in some cases the State and General Governments have concurrent power over the same subject, and where the two jurisdictions come in conflict, the General Government, as the paramount authority, must prevail. But they hold in such cases that whilst Congress passes laws upon any subject over which it has concurrent power with the States, it may at the same time refrain from. exercising exclusive power over the subject, and expressly allow the States to act concurrently with the General Government. In this case, they hold Congress has expressly indicated its will not to exercise exclusive jurisdiction so far as a certain mode of taxation is concerned. Therefore the States may exercise their original power of taxation in this particular. Congress having declared that the States may exercise concurrent jurisdiction with the United States over those National banks, so far as to collect a certain character and amount of taxes on the shares and the real estate of the banks, would seem by strong inference to have intended to reserve to itself exclusive

power over the taxation of banks and bank property of other descriptions.

But this does not dispose of the question, whether the States have an independent right to tax all property situate within their territorial limits.    We think it was so held in the case of *M'Culloch* v. *State of Maryland et al.*, and *Osborn* v. *The Bank.*   In these cases there was no intimation that the States held such power at sufferance of Congress, or that they could be deprived of their right to tax property within their limits by any act of the United States Government, but it seemed to be placed upon the inalienable power of the States.    The distinction taken is, that " the States have no power by taxation or otherwise to retard, impede, burden, or in any manner control the operations of constitutional laws enacted by Congress."    But according to the views there expressed, to levy the ordinary property tax of a State on the local property of an institution chartered to aid the Government in conducting its financial affairs, cannot be considered a law passed for the purpose of retarding, impeding, or burdening the operations of the Act of Congress under which it holds its charter.    That such taxation may incidentally affect the operations of such institution there can be no doubt.    And in those States where the State Constitutions fail to provide for equal rate, or percentage of *ad valorem* taxes, a law might be so framed as to cripple very much the operations of banks, and still be only a tax on the local property in the State.    For instance :    Suppose a law were passed requiring a tax of fifty per cent. per month on its assessed value to be collected on all houses and lots used for banking purposes.    This, if constitutional, (and certainly a State Constitution might be so framed as to admit of this species of taxation) would prevent the establishment of a National bank in any State where such law existed.    The bank, with such an enactment on the statute book of the State, could not get a house within which to transact its business.

It is true that Marshall is careful to speak of taxing the property of the bank " as the property of other citizens" is taxed.    Probably if a law had been passed by any State of the character we have suggested, Marshall, with his accustomed good sense and dis-

regard for mere technicalities, which interfered with substantial justice, would have said that this law shows by its terms it was not enacted in good faith to collect revenue from local property, but to prevent banks from getting houses in which to transact their business, and we will hold it unconstitutional and void. It is, however, always a delicate task for a Court to look beyond the plain letter of a law, and discuss the intention of the Legislature which passed it, in order to find some ground on which to declare it invalid.

Believing, then, that a State may, by a tax on the local property of a Government bank, " retard, impede, burden," and in some manner " control" its operations, we come, not without hesitation, to the conclusion, that where the Government has pointed out a method by which the real estate of the bank, within any State, may be taxed, and also the method of taxing the stock of the same bank within the State where it is located, the State should be, and is excluded from all other methods of taxation on the bank property. This conclusion is, we think, hardly in consonance with the opinion of Marshall in the two cases cited from 4 and 9 Wheaton. But we think it is in harmony with the views of the present Supreme Court of the United States, as expressed in the case of *Van Allen* v. *The Assessor.*

Besides the notes and bonds in this case, although undoubtedly property, and perhaps such as may be treated as having a locality in the State, are such property as the bank must deal in, in the ordinary course of its business. By a sufficient tax on that commodity, in which the bank must of necessity deal, you may entirely destroy the business of the bank. This, then, partakes somewhat of the nature of a tax on the *business* of the bank, although ostensibly a tax on local property.

Judgment of the Court below affirmed.

JOHNSON, J., did not participate in the foregoing decision.