[No. 1374.]

FIRST NATIONAL BANK OF WINNEMUCCA, Respondent, *v.* GEORGE KREIG, ISABELLA SLOAN and MARY S. KREIG, Appellants.

NATIONAL BANKS—TAXATION.—National banks are only subject to taxation upon the shares of stock owned by the shareholders therein, and upon their real estate. Mortgages held by such banks are not subject to taxation.

ABSOLUTE DEED, WHEN A MORTGAGE.—An absolute deed made by the owner of property for the purpose of securing money due to third persons, in connection with a written acknowledgment by the grantee that he holds it for that purpose, is a mortgage.

MORTGAGE—RECONVEYANCE.—Where property so held is deeded back to the grantor, with the consent of the beneficiaries, the lien of the mortgage is lost, and such consent need not be in writing.

(Syllabus by BIGELOW, J.)

APPEAL from the District Court of the State of Nevada, Humboldt county.

*A. E. Cheney,* District Judge.

The facts fully appear in the following statement by the justice delivering the opinion.

The facts deemed material to the decision of the case are as follows: The property in controversy, together with a large number of cattle and horses, was originally owned by Isabella Sloan and her two children, James Sloan and Mary S. Kreig, wife of George Kreig, but prior to July 25, 1889, with unimportant exceptions, it had all been conveyed to James, who then owed his mother thereon about twenty-three thousand dollars, and his sister about eleven thousand dollars, and was largely indebted to the First National Bank, plaintiff herein. On that date defendant George Kreig purchased the property for eighty thousand dollars, assumed James' indebtedness to the parties mentioned, and borrowed more money from the bank, so that he owed the latter about forty thousand dollars. To secure these various sums, for which he had given notes, Kreig made an absolute deed of the property to George S. Nixon, cashier and managing agent of the plaintiff, who gave back to Kreig a writing certifying that the deed was executed simply as security for the payment, first, of the money due the bank; next, that due Mrs. Sloan; and then, that due Mrs. Kreig. The notes to the bank became due that fall, but Kreig was unable to raise the money to pay them, and applied to Nixon to help him do so, as did Mrs. Sloan. Nixon ascertained that twenty-five thousand dollars could be borrowed upon a mortgage to be made by Kreig and wife upon the whole property, provided the title was found to be perfect in them. Nixon testified that he explained this to all the parties, and told them that the title would have to be placed back in Kreig; that all consented to its being done, and upon this understanding the money was obtained, the mortgage given and he made a deed of all the property back to Kreig, who promised to return the defeasance made by Nixon July 25, 1889, but failed to do so, and Nixon forgot about it. Kreig still owed the bank upon his note a balance of two thousand four hundred dollars, but the note was surrendered and it was charged to his open account. By July 28, 1890, this had increased to seven thousand six hundred and forty-six dollars, for which the bank took a mortgage upon the property. On August 14, 1891, the mortgage was renewed, and this action is brought to foreclose the last-named mortgage. Over fifty

thousand dollars worth of the cattle and horses perished during the winter of 1889-90. Mrs. Sloan was made a party, as claiming some interest in the property, and Mary Kreig became a party at her own request. Mrs. Sloan's and Mrs. Kreig's answers set out the various transactions between the parties, alleged that the plaintiff's mortgage was fraudulent and void as to them, that Nixon's deed to Kreig was made without their consent, and asked that it be decreed that they still held a lien upon the property to secure the sums due them from Kreig, and that the lien be foreclosed and the property sold. The court rendered a decree in favor of the plaintiff, and directed a sale of the property to pay the plaintiff's mortgage.

*Robert M. Clarke,* for Appellants.

I. The money at interest secured by plaintiff's mortgage was subject to taxation (Gen. Stats. of Nev. Sec. 1081) unless plaintiff was exempt from the payment of such tax because of being a national bank. The decision of this court in *State* v. *National Bank,* 4 Nev. 348, should not be followed, as it is clearly in conflict with the decisions of the supreme court of the United States. (*McCullough* v. *Maryland,* 4 Wheat. 316; *Osburn* v. *Bank of United States,* 9 Wheat. 738; *Railroad Co.* v. *Peniston,* 18 Wall. 5; *National Bank* v. *Commonwealth,* 9 Wall. 353; *National Bank* v. *City of Newark,* 39 N. J. L. 380. *State* v. *C. P. R. R. Co.,* 10 Nev. 47.)

II. Plaintiff's mortgage was made and received with intent and for the purpose of defrauding the revenue and avoiding taxation, and for this reason it is illegal and cannot be enforced. (*Drexler* v. *Tyrrell,* 15 Nev. 114; *Lowery* v. *Erskine,* 113 N. Y. 52; Coolie on Taxation, 299, note 4; 2 Parsons on Contracts, 260.)

III. The deeds, though absolute in form, were in fact deeds of trust, and were given and received with the understanding that they were security for debt.

*M. S. Bonnifield,* for Respondent.

I. If the evidence and all of the facts and circumstances show that any trust was ever created under either of the trust deeds in favor of Isabella Sloan and Mary S. Kreig, it was waived and destroyed by their own acts.

II. Both Isabella Sloan and Mary S. Kreig are estopped

from claiming anything in this action because of their affirmative acts, acquiescence and their silence.

III. Money at interest secured by mortgage, held by national banks, is not subject to state taxation. (*State* v. *National Bank*, 4 Nev. 338.)

By the Court, BIGELOW, J. (after stating the facts as above):

The defendants plead that the mortgage to the plaintiff of July 28, 1890, was canceled, marked satisfied upon the records, and the new mortgage of August 14, 1891, taken for the purpose of escaping taxation thereon, and for this reason it is claimed that the latter mortgage is void, under the authority of *Drexler* v. *Tyrrell*, 15 Nev. 114, upon the ground that it was taken and made for the purpose of defrauding the revenues of the state of Nevada. To this it is replied that the mortgage, being the property of a national bank, was not subject to state taxation, and it seems admitted that if not, there could be no fraud in attempting to escape such taxation, which would be sufficient to defeat the mortgage.

In *State* v. *First National Bank of Nevada*, 4 Nev. 348, it was held that such mortgages were not subject to state taxation. The defendants, however, contend that this decision was erroneous, and ask us to overrule the doctrine there announced. But we are of the opinion, aside from that case, that it is now well settled by the decisions of the supreme court of the United States, which in such matters is the final arbiter, that national banks are only subject to state taxation upon their real estate, and upon the shares of stock in the bank owned by the stockholders. (*Talbot* v. *Silver Bow County*, 139 U. S. 438; *People* v. *Weaver*, 100 U. S. 539; *Rosenblatt* v. *Johnston*, 104 U. S. 462; *Covington City Nat. Bank* v. *City of Covington*, 21 Fed. Rep. 484; *City of Carthage* v. *National Bank*, 71 Mo. 508; *National Bank* v. *The Mayor*, 62 Ala. 284; *Pittsburg* v. *National Bank*, 55 Pa. St. 45.) Such being the case, the matter is not now open for discussion in the state courts, and it would be useless for us to consider it further.

2. The deed made by Kreig to Nixon was merely to secure the money due the bank, to Mrs. Sloan and to Mrs. Kreig, and amounted simply to a mortgage. Taking the deed and the defeasance made by Nixon together, this is perfectly clear. If

the money was paid, the property would revert to Kreig; if not paid the only remedy of the parties would be an action for foreclosure, the same as upon any other mortgage. (*Danzeisen's Appeal,* 73 Pa. St. 65; *Harper's Appeal,* 64 Pa. St. 315; *Steinruck's Appeal,* 70 Pa. St. 289; *Stephens* v. *Allen,* 11 Or. 188; *Brumfield* v. *Boutall,* 24 Hun. 451; 2 Perry, Trusts, Sec. 602; Pom. Eq. Jur. Secs. 1192, 1196.) It is immaterial that it was made to a third person, instead of to the beneficiaries, and this fact does not change the nature of the security. (2 Perry, Trusts, Sec. 602, *et seq.*) The transaction was quite different from that of a deed of trust authorizing the trustee to dispose of the property, either to raise a fund or to pay a particular debt, which in California has been held to be a trust and not a mortgage (*Koch* v. *Briggs,* 14 Cal. 256); although the weight of authority is the other way. (Jones, Mortg. Sec. 1769.)

Being simply a mortgage, which in this state amounts merely to an equitable lien upon the property, it could be released by parol. (*Ackla* v. *Ackla,* 6 Pa. St. 228; *Howard* v. *Gresham,* 27 Ga. 347; *Griswold* v. *Griswold,* 7 Lans. 72; *Southerin* v. *Mendum,* 5 N. H. 420; *Leavitt* v. *Pratt,* 53 Me. 147; *Wallis* v. *Long,* 16 Ala. 738; 2 Reed. Stat. of Frauds, Sec. 453; 3 Pom. Eq. Jur. Sec. 1183.) It follows that, if Mrs. Sloan and Mrs. Kreig consented to Nixon's deeding back to Kreig, the mortgage was so released, for Kreig thereby became the holder in his own right, of both the legal and equitable title to the property, free from any incumbrance. They thereby waived any lien which they had held upon it, and thereafter Kreig owned it, the same as he owned any other property that had never been incumbered, and could sell or mortgage to others at his pleasure.

The substance of the findings in the case is that they did so consent. This is supported by Nixon's testimony and by the conduct and declarations of the parties, which are also competent evidence, and from which alone, if sufficient, it might be inferred that the agreement was made. (*Ackla* v. *Ackla,* 6 Pa. St. 228.) Nor are we able to say that the testimony supporting this finding is not clear and satisfactory. Taking it altogether, it seems reasonably certain that they did understand that Nixon was about to convey the property back to Kreig, that the effect of this would be to leave them without security upon the property, and that with this knowledge they consented to its being

done. There is no evidence of any fraud, deception, or overreaching upon the part of the representatives of the bank. The most that can be said is that they drove some rather hard bargains upon the necessities of these people, whose misfortunes came about through no fault of their own, but there is very little to show that all the transactions were not open, well understood and freely consented to by the defendants. Kreig owed money which was a first lien upon his property, and which had to be paid. If not paid, and the property was sacrificed, there would be nothing with which to pay what he owed his wife and her mother, and nothing left for him. They were as much interested in obtaining this money as Kreig was himself, and the situation forced them to do whatever was necessary to be done in order to raise it. A full statement of the testimony would serve no useful purpose, and it is therefore omitted.

Kreig being the absolute owner of the property on August 14, 1891, was, of course, at liberty to mortgage it, and we can see no reason why the mortgage then made by him is not legal and binding.

The judgment and order refusing a new trial are affirmed.