[No. 2059]

POTOSI ZINC COMPANY (A CORPORATION), CHRIS N. BROWN, P. G. GRAY, WILBUR O. DOW, AND ELEANOR BROWN, APPELLANTS, *v.* J. J. MAHONEY AND P. H. MAHONEY, RESPONDENTS.

1. APPEAL AND ERROR—OBJECTION BELOW—MOTION FOR NEW TRIAL—NECESSITY.

An appellant cannot obtain a review of matters not complained of in the motion for new trial.

2. LIBEL AND SLANDER—SLANDER OF TITLE—NATURE OF ACTION—"SLANDER."

While the original term "slander" was applied more to words or utterances, the nature of which were defamatory of individuals, the term is applicable to utterances with reference to property, whether real or personal; but, in order to maintain an action for slander of title to property, it is necessary to show that the words spoken were false, that they were maliciously spoken, and that plaintiff suffered a pecuniary injury.

3. LIBEL AND SLANDER—SLANDER OF TITLE—PUBLICATION.

In slander of title it must appear that the defamation complained of was published, and the rule existing in libel cases that they are not deemed to be published where the manuscript comes directly and unread into the possession and control of the plaintiff is applicable; the defendant not being liable where plaintiff, having received it, displays it to third persons.

4. LIBEL AND SLANDER—SLANDER OF TITLE—REMEDY.

In general, in actions for slander of title to property, there can be no recovery except for damages, and a party is hardly entitled to the extension of an option because of the grantor's slander of the option.

5. LIBEL AND SLANDER—SLANDER OF TITLE—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action by the grantees of an option, where they sought an extension of the same because of the grantor's slander of the option, evidence *held* insufficient to establish such slander.

6. APPEAL AND ERROR—REVIEW—MORTGAGES.

A finding by the trial court on conflicting evidence will not be disturbed on appeal, unless it is clear that a wrong conclusion has been reached.

APPEAL from the Fourth Judicial District Court, Clark County; *E. J. L. Taber,* Judge.

Action by the Potosi Zinc Company (a corporation) and others against J. J. Mahoney and P. H. Mahoney. From

a judgment for the defendants, the plaintiffs appeal.
**Affirmed.**

The facts sufficiently appear in the opinion.

*W. R. Thomas, Haas, Garret & Dunnigan,* and *Stewart & Stewart,* for Appellants.

*Richard Busteed* and *Gray, Barker, Bowen, Allen, Van Dyke & Jutten,* for Respondents.

By the Court, McCARRAN, J.:

By this action, brought in the district court of the Fourth judicial district in and for Lincoln County, plaintiffs, appellants herein, sought to obtain a decree of that court extending the time for the exercise of a certain option, or, in lieu thereof, a decree declaring that the cancelation of a certain agreement entered into between the Potosi Mining Company and the Potosi Mineral Company and theretofore conveyed by mesne process to plaintiffs be set aside. The cause was tried in the Fourth judicial district court before Hon. Geo. S. Brown, judge thereof presiding, and judgment was entered by the said judge in favor of respondents and against the appellants. Subsequently a motion for a new trial was made and presented to the same court before Hon. E. J. L. Taber, successor of Judge Brown, and his judgment was thereafter entered, denying plaintiffs' motion for a new trial. In so far as the record discloses, the principal ground relied upon in furtherance of the motion for a new trial was that the evidence did not sustain the judgment theretofore entered by Judge Brown, formerly presiding judge of said court. Heretofore an appeal was taken to this court from the judgment, and the same was dismissed by this court for want of prosecution.

1. Appellants, in their motion for a new trial, relied upon three grounds: First, that the decision and judgment were not supported by the evidence, and were contrary to the evidence; second, that the decision was

against the law; and, third, that the court committed errors of law at the trial of the cause. These being the only matters presented to the trial court on motion for a new trial, they are therefore the only matters upon which this court will review.

As appears from the appellants' brief, the principal ground relied upon to authorize the trial court in granting a new trial, or to authorize this court in reversing the trial court in this respect, is that the decision of the trial court is not supported by the evidence, and is contrary thereto. Appellants, in their brief, especially except to the finding No. 15, as filed by the trial court, wherein that court stated: "That they (the respondents) never declared that they did not consider said option in full force and effect. That they never declared that they repudiated the same. That they never slandered nor cast doubt upon the title of said option holders to said option. That they have never at any time repudiated said option in any way, nor represented to any one that they did not consider said option in effect. * * * The court finds that no acts or conduct of defendants in any way prevented said option holders from making a sale of such property, or from paying the purchase price therefor within the time aforesaid. That it is not true that by reason of any act of defendants said option holders have been deprived of five months and ten days, or of any time whatever of the period provided by said option agreement, and the court finds that plaintiffs and said option holders in particular have suffered no injury whatever, nor will they continue to suffer injury if defendants are permitted to declare said option terminated. And the court finds that no damage or detriment has been suffered by plaintiffs or any of them on account of any conduct of defendants."

As appears from the transcript in this case, an option on a certain group of mining claims was executed by J. J. and P. H. Mahoney, respondents herein, to Chris N. Brown, Wilbur O. Dow, and P. G. Gray, as trustees for the benefit of the Potosi Zinc Company. By the terms

of the option the said Brown, Dow, and Gray, as trustees, were to pay to Mahoney Bros. $100,000 in payments as follows: $50,000 on or before six months from the 20th day of March, 1909; $25,000 in one year; and $25,000 in two years from the date of the contract. At the time of making the contract the trustees paid to Mahoney Bros. the sum of $250, and agreed to pay the sum of $150 per month for four additional months into the Citizens' National Bank, at Los Angeles, Cal.

At the trial of the case J. J. Mahoney was called as a witness on behalf of the plaintiffs, and from the transcript it appears that he testified: "About one month after said option was given I tendered back the $250 paid on said agreement to Chris N. Brown, J. N. Strine, and Wilbur O. Dow, each separately, and told them that we wanted to cancel the contract, and we withdrew from the Citizens' National Bank all deeds and title papers theretofore deposited with said Citizens' National Bank for the perfection of sale under said option in the event said option was exercised." At another place in his testimony he said in substance: "We refused to accept the $150 per month deposited in the Citizens' National Bank each month for four months under said agreement."

Appellants in this case contended in the trial court that, by reason of the acts and utterances of J. J. and P. H. Mahoney relative to the option, they were unable to sell or dispose of the property, and therefore unable to carry out and complete the terms and conditions of the option. But, in reviewing the testimony given and the exhibits as filed, it is apparent that the utterances of respondents relative to rescinding the option were made only to Gray, Brown, and Dow, the parties to whom the option had been given, or to their attorneys.

It appears that on March 25 respondents wired P. G. Gray as follows: "Meet me Los Angeles must discuss option further to once otherwise trouble ahead."

Plaintiffs' Exhibit No. 12 is a letter from W. E. Smith, watchman at the mine, to P. G. Gray, one of the trustees for the appellant corporation. In that letter the writer

says: "I can't see how I am going to do anything with the property the shape it is in.   Mr. Mahoney has been up twice, and says you people misrepresented things to him, and he says he will not turn the property over." In the latter part of the same letter the writer says: "If you get it in shape, I can sell the mine; but here is one month past, and nothing doing.   I can't get any more provisions in town, and I am fighting every time I am in town to keep them from liening the mine; but they won't be put off very much longer."   In his testimony the witness Smith, writer of the letter, plaintiffs' Exhibit No. 12, of which the foregoing are excerpts, said: "Referring to my statement 'and he says he will not turn the property over,' I do not know as he said that exactly.   I put that in to hurry these people up.   Mr. Mahoney did not tell me that he would rescind the option."   The appellants contend that, the defendants having loaded and shipped ore from the mine after signing the option, their acts in that respect tended to establish appellants' contention that Mahoney Bros. had repudiated the contract, and by their shipping ore from the mine evidenced their repudiation to the world.

Defendants' Exhibit No. ZZ is a carbon copy of a letter from Mahoney Bros. to the Empire Zinc Company, at Denver, and in that letter the following appears: "We have a carload of zinc ore at Arden Station, Nevada, which we would like to sell.   Please quote us your best price.   This ore will run about 37 per cent to 38 per cent zinc and probably 10 per cent lead.   We have taken over the Potosi Zinc Mine, and you will remember we shipped you a great deal of ore some few years ago.   Please give us your best prices on the ore, as we want to get a line on what this ore is worth.   We will be ready to ship the ore in about ten days, and would like to hear from you before then."

Defendants' Exhibit No. NN is a carbon copy of a letter from Mahoney Bros., respondents herein, in reply to the Empire Zinc Company, in which letter it is stated:

"We are receipt of your letter of May 14 in regard to a carload of zinc, which we are about to ship from Arden, Nevada. You understand we will not be in a position to make shipments of ore steadily from the mine until some time in September; but, as we had just a carload at Arden, we wanted to ship it immediately. * * * This is a very nice bunch of ore, and we would like to dispose of it, but do not like to ship it to anybody else. * * * Some time in September we would like to take up the question of operating the mine and shipping ore to you steadily; but until that time we do not think it would be any use to take the question up."

It may be well to observe at this point that by the conditions of the option in question in this case the time for making the first payment of $50,000 expired on the 20th day of September.

The testimony of P. H. Mahoney relative to the foregoing letters was introduced in explanation of the statement made therein, and from the transcript it is disclosed that the ore shipped to the Empire Zinc Company by Mahoney Bros. and mentioned in the communication was ore that had been on the ground at the time of filing the option. The respondents J. J. Mahoney and P. H. Mahoney, being called upon the stand, both deny having repudiated the option contract. It nowhere appears in the transcript that they even inferentially repudiated their contract, or that they requested a rescission of the contract to parties other than those to whom the option had been given, or the attorneys for the parties.

The letter of J. J. Mahoney to P. G. Gray, dated April 28, while it states that he had taken all of the papers out of escrow, sets forth: "At any rate, it seems to me that, if yourself and your associates intend to avail yourselves of the option, it is your immediate duty to remove all liens and to cause conveyances of the claims filed on by Smith to be made to us, instead of to the Potosi Zinc Company."

Plaintiffs' Exhibit No. 5 is a carbon copy of a letter

from Mahoney Bros. to W. E. Smith, watchman in charge of the mine, of date July 10, 1909, and in that letter respondents state: "There are several reasons why we would prefer not to be responsible for this work (assessment work) at present. There will be time enough in which to do the work after September 20. We request that this entire matter be postponed until after the option agreement has expired, unless the option holders are paying costs."

Counsel for appellants, in their brief, contend that, as P. G. Gray, one of the option holders, was carrying on negotiations for the sale of the property with companies and concerns in close business connection with the Empire Zinc Company, and as he was also negotiating with the Empire Zinc Company itself, through its representatives, with the view of selling the property and complying with the terms of the option, the letters from Mahoney Bros. offering ore from the mine for sale, and their acts and utterances in that respect, tended to repudiate the option given to Gray, Brown, and Dow.

There is no evidence in the record disclosing that the Empire Zinc Company, or any of their business associates with whom Mr. Gray was negotiating, considered the acts or utterances of Mahoney Bros. in the sense of repudiation of the option. Moreover, as appears from the letters of Mahoney Bros., respondents herein, to the Empire Zinc Company, the option and contract were recognized by respondents to such an extent that they stated to the Empire Zinc Company, in their letter of May 22, that some time in September they would like to take up the question of operating the mine and shipping ore steadily, and, again, in their letter of July 29 to the Empire Zinc Company, they said: "We have concluded, however, not to commence operations until about the first of October."

In our judgment these letters set forth in no uncertain terms the acknowledgment of respondents of their inability to ship ore from the Potosi mine until a time after

the date at which the option of appellants would have expired.

From the record in this case and the letters filed as exhibits, it appears that, in so far as the option holders were concerned, there was one especially energetic in his efforts to bring about a culmination of the contract. This was P. G. Gray, who, according to his letters, visited concerns in the eastern cities for the purpose of negotiating a sale of the property. As appears from the letters of P. G. Gray in the record, and from his testimony, he was putting forth every effort to bring about the desired result, *i. e.,* the sale of the property. It appears from his letters that he was handicapped in this effort, first, by reason of tariff legislation then pending in Congress, secondly, by reason of his inability to secure the expert's report, and, thirdly, and perhaps most important of all, by the shortness of time allowed him in which to bring about a transaction of this magnitude. Gray being the one who had assumed the burden of completing the transaction, and he being by far the most energetic and active in his endeavors to bring about the fulfilment of the contract, and he being an interested party in the affair, his testimony in behalf of the appellants must be considered with the view of determining whether or not the acts or utterances of the respondents hindered him to any degree, or were responsible for his failure to bring about the desired result.

In his testimony the witness Gray said: "Troutman is with the Empire Zinc Company. I saw Mr. Troutman several times, and tried to get him to put up the $50,000. The thing was practically consummated that afternoon of the 16th of September. He pressed the button for the lawyer to come down. He said that part of it was all right, but he wanted time to look into details. I wired Los Angeles that we needed a few more days. That was all that interfered with the deal at that time.  *  *  *  The fact that I did not have Mr. Smith's report on the property before the 1st of August

interfered with my handling the property prior to that
time. It did not give me the ammunition I wanted.
When I say in my letter that it was impossible to handle
the property without the engineer's report, I mean that
retarded the sale."

From the foregoing exhibits, and from the testimony
of Gray, it will be observed that the Empire Zinc Com-
pany, with whom Mr. Gray was negotiating for the sale,
being the same company with whom the respondents
had corresponded relative to shipments of ore, did not
regard the correspondence of respondents as acts or
declarations repudiating or rescinding the option held
by appellants. The Empire Zinc Company, as appears
from the testimony of Mr. Gray, were ready to transact
business with the option holders. All that interfered
with the deal at that time, according to Mr. Gray's tes-
timony, was the fact that they needed a few more days
to look into details. The testimony of witness Gray
discloses an energetic effort on his part to sell the prop-
erty and comply with the terms of the option, and his
efforts did not appear to be less energetic after receiv-
ing the letter of April 28 from respondents Mahoney.
It does not appear from his testimony that he regarded
the utterances in that letter as a repudiation of the
option on the part of Mahoney, because, as appears from
his testimony, he visited many concerns after that date
with the view of selling the property. It nowhere
appears that the acts or utterances of respondents rela-
tive to the option were made known to any of the parties
with whom Gray negotiated save and except in so far
as they may have been disclosed by Gray himself, and,
if this was done, the respondents Mahoney could not be
held responsible for the results of the acts of appellants,
or their representatives.

As appears from the transcript in this case, and
especially from the testimony of the witness Gray,
negotiations which he endeavored to carry on with con-
cerns in the east, with the view of selling the property,
terminated as soon as he showed them respondent's
letter of April 28. It appears that this was a letter

written by respondents to the plaintiff Gray, and passed directly to Gray, and was seen by no one other than those to whom he may have displayed the same. It is upon this letter particularly that plaintiffs predicate their action, based on the theory that by .the utterances in this letter respondents slandered the contract or option held by appellants, and thereby prevented them from carrying out the primal object of the option, viz, the sale of the property to third parties.

2. The original application of the term "slander" was applied more to words or utterances, the nature of which were defamatory to the character of an individual. The term, however, has been made applicable to utterances and words made with reference to property, whether real or personal. In order to maintain an action for slander of property, it is necessary to establish that the words spoken were false; that they were maliciously spoken by the defendant; and that the plaintiff sustained some special pecuniary damage as the direct and natural result of their having been spoken. Utterances made with reference to property are not in themselves actionable, and it therefore becomes necessary for the plaintiff to allege and prove by the same degree of proof necessary in other civil actions wherein the plaintiff has sustained damage. The damage, if any has been sustained by the plaintiff, must be shown to have been the direct and natural result of the utterances made by the defendant, and, although the defendant may have uttered words or assertions, which were slanderous in their character, he cannot be held liable for the repetition of those words or utterances by others, unless it be shown that the repetition was by the direction or authority of the party originating the same. (*Burkett* v. *Griffith*, 90 Cal. 532, 27 Pac. 527, 13 L. R. A. 707, 25 Am. St. Rep. 151.)

3. It is a rule generally applicable to cases of slander, especially in actions for slander of property, that the party claiming himself to be aggrieved by the utterances of another must establish that the utterances or derogatory assertions were made by the defendant in

fact. It is generally stated that libel is deemed to be published as soon as the manuscript has passed out of the defendant's possession, unless it comes directly and unread into the possession and control of the plaintiff. That some third person had an opportunity of reading it in the interval is not sufficient, and the defendant cannot be held liable where the plaintiff, having received the manuscript directly, wilfully displays the same to a third party. (Odgers, Libel and Slander, 5th ed. p. 162.)

4. It must be observed in this case that the plaintiffs seek a remedy rather unusual. They ask the court in this case for a judgment, the nature of which would be to extend the time and terms of their option for a period of five months and ten days in excess of that which was agreed upon by the parties originally. There is no direct claim for pecuniary damages, nor did the plaintiffs aver or offer the proof that they were ready to meet the terms of the option. The general rule in actions for slander of property is that there can be no recovery except for damage. The gist of the action is the especial damage sustained. (Newell on Slander and Libel, 2d ed. p. 20.)

5. It is contended by appellants in this case that the letters written by respondents to the Empire Zinc Company offering the ore for sale indicated a repudiation of the option and contract, and was therefore inferentially a slander of the option, and indicated repudiation. This contention, in our judgment, is not tenable, especially in view of the fact that subsequent letters from respondents to the Empire Zinc Company expressly stated that they would not be in a position to deliver ore until some time after the date on which the option would expire. There was no attempt on the part of appellants, in so far as the record discloses, to make a showing in the trial court that the Empire Zinc Company regarded the option as having been repudiated by respondents. In our judgment the very contrary is shown by the testimony of witness Gray, wherein he

testifies as to his negotiations with Mr. Troutman, of the Empire Zinc Company, and says (referring to September 16) : "Tried to get him to put up the fifty thousand.   The thing was practically consummated that afternoon, the 16th of September.   He pressed the button for the lawyer to come down.   He said that part was all right, but he wanted time to look into details.   I wired Los Angeles that we needed a few more days.   That was all that interfered with the deal at that time."

From these statements made by the witness Gray, it will be observed that the deal was practically consummated.   The prospective purchaser, Mr. Troutman, representative of the Empire Zinc Company, in so far as the record discloses, raised no question as to the repudiation of the option by respondents, but required time to look into details.   Moreover, it is manifest that on the 16th of September, when this transaction was about to be consummated, the witness Gray, one of the parties interested, did not consider that the respondents had repudiated the option, because on that day he wired to his associate, Chris N. Brown: "Have operating department framed up satisfactory deal but blocked by legal department pending time necessary examine title, lease, records, etc.   Tell John give me thirty days and will go out with funds.   Boston tomorrow."

As we observed before, there was but one party especially active in his endeavors to bring about a sale of the property and the fulfilment of the option, and that party was the plaintiff Gray, president of appellant company, and, in our judgment, the trial court was warranted in its findings and its order based on his testimony, if on nothing else.   He testified: "I was president of the company, and did whatever I could to get the thing through.   *   *   *   I do not know that any of my sales were blocked by John Mahoney.  *   *   *   If John knew how I had worked for himself and all the rest of us, I think he should have granted the extension."

It is the contention of the appellants, as set forth in their brief, that finding No. 15 of the trial court was unsupported and unwarranted by the evidence, and in that respect counsel for appellants contend that they did not rest their argument upon conflicting testimony. Their position, however, in that respect is untenable in view of the showing made before the trial court.

6.  The general rule is that, where there is a substantial conflict in the testimony, this court will not substitute its judgment for that of the trial court, and will only interfere when upon all the evidence it is clear that a wrong conclusion has been reached. (*Watt* v. *Nevada Central R. R. Co.,* 23 Nev. 154, 62 Am. St. Rep. 772.) This is a rule adhered to by most of the courts of last resort, and one which we consider applicable in this case under consideration.

It therefore follows that the order of the trial court in denying appellant's motion for a new trial should be affirmed.

It is so ordered.