SUMMA CORPORATION, a DELAWARE CORPORATION, APPELLANT, *v.* HERMAN M. GREENSPUN AND BARBARA J. GREENSPUN, RESPONDENTS.

No. 10412

February 28, 1980                                    607 P.2d 569

———

[7]The Chief Justice, having voluntarily disqualified himself, designated the Honorable Frank B. Gregory, Senior District Judge, to sit in his stead in this case. Nev. Const. Art. 6, § 19; SCR 10.

[Rehearing denied August 18, 1980]

GUNDERSON, J., and MOWBRAY, C. J., dissented.

*Lionel Sawyer & Collins,* of Las Vegas, and *Cromer, Barker & Michaelson,* of Las Vegas, and *Vaughan, Hull, Marfisi & Miller,* of Elko, for Appellant.

*Ralph Denton,* of Las Vegas, and *Jules Yablok,* of Las Vegas, and *Brian L. Greenspun,* of Las Vegas, and *Bradley & Drendel, Ltd.,* of Reno, for Respondents.

## OPINION

By the Court, THOMPSON, J.:

Herman and Barbara Greenspun, hereinafter Greenspun, commenced this action against Summa Corporation to recover damages for slander of title to real property and to cancel a deed of trust encumbering the same. The cause was tried to the court and judgment later entered for Greenspun, together with damages totalling $1,053,204.61. Summa has appealed.

Summa Corporation, formerly Hughes Tool Company, is a Delaware corporation with extensive holdings in Nevada. The sole stockholder of Summa was Howard R. Hughes, now deceased. Greenspun owns the Las Vegas Sun, a newspaper of general circulation, and other properties in Clark County, Nevada. Transactions between Summa and Greenspun commenced in 1967 at which time Summa loaned Greenspun $4,000,000 at three percent interest. That loan was evidenced by a promissory note providing for principal payments in annual installments from September 20, 1970, through 1975. This note was secured by a deed of trust covering approximately 2000 acres of land surrounding the Paradise Valley Country Club (PVCC) and a collateral pledge agreement for all the shares of PVCC and 80 percent of the Las Vegas Sun. At about the same time Summa deposited with Greenspun $500,000 as advance advertising in the Las Vegas Sun. The deed of trust was not recorded at that time.

In 1969 Summa and Greenspun reached another agreement. Summa was to purchase from Greenspun the Paradise Valley Country Club for $2,250,000, property described in the Ross option for $784,000, land owned by a trust for the Greenspun children for $216,533, and the 2000 acres surrounding PVCC for $4,429,467. The 1967 note was to be liberalized so that payments on the $4,000,000 principal amount would not commence until 1980 and would not have to be paid in full until the year 2005.

Documents to carry out this agreement were prepared. A full warranty deed and bill of sale for PVCC were signed and delivered, and Greenspun received a check for $2,250,000. The deed warranted title to two parcels not owned by PVCC. A contract for the 2000 acres surrounding the golf course, providing for a

closing date of not later than June 15, 1969, was executed, as was the contract for the Ross option property which provided for a closing not later than September 15, 1969. The contract covering the children's trust land was not signed. These closings never occurred. The new promissory note and collateral pledge agreement were backdated to September 27, 1968, at the suggestion of the accountant. The new note stated that it was secured only by a collateral pledge agreement on stock on the Las Vegas Sun and was a "renewal, rearrangement and extension" of the September 27, 1967, note. Since the land surrounding the golf course was being purchased by Summa, there no longer was need for the deed of trust.

For some reason not fully disclosed, Howard Hughes decided to rescind the whole transaction. He requested trusted agents to work out such a rescission with Greenspun. After negotiation, Greenspun agreed to rescind the three executory contracts providing the executed agreement for the sale of PVCC stand along with the new promissory note and collateral pledge agreement. He also requested the return of the first promissory note and deed of trust. These terms were approved by Howard Hughes and Greenspun was so advised. Thereafter, Summa did not demand payment of principal pursuant to the first promissory note, and payments by Greenspun (of interest) were made and accepted on the second note.

On September 21, 1971, the Board of Directors of Summa approved recordation of the deed of trust covering the 2000 acres surrounding PVCC.

The agreement to rescind was oral. Its terms were never reflected in written form. The agreement contemplated that in return for the forbearance of Greenspun as to the executory land sale contracts, Hughes and his corporation, Summa, would confirm the PVCC sale and the second promissory note and collateral pledge agreement and return the first promissory note and deed of trust. Greenspun did forbear. Summa did not return the first promissory note and deed of trust.

The central issue litigated below and again contested before this court is whether the statute of frauds precludes enforcement of the oral agreement to rescind. Subordinate issues regarding slander of title and damages also were tendered to the trial court for decision and are once more presented to this court. Relevant information regarding such issues and not yet stated will be set forth as those issues are discussed in this opinion.

1. Statute of Frauds.

No interest in lands shall be surrendered unless by conveyance in writing subscribed by the party surrendering the

same or by his lawful agent thereunto authorized in writing. Such is the command in NRS 111.205(1).[1] With regard to this statute the trial court expressed alternative conclusions. First, that since a deed of trust creates a security lien rather than an interest in land, an oral agreement to surrender that lien is not within the statute. Second, the parties did not contemplate a writing in order to perform the agreement. Rather, performance was to be by physical delivery of the deed of trust and first note to Greenspun. Third, there was part performance of the oral agreement permitting its proof by parol evidence.

(a) We believe that NRS 111.205(1) has direct application to the surrender of a deed of trust. Unlike the mortgage in National Bank v. Kreig, 21 Nev. 404, 32 P. 641 (1893), relied upon by the district court, a trust deed conveys the trustor's title or interest in land to the trustee. Indeed, we heretofore have ruled that a document, whether viewed as a deed or deed of trust, is a conveyance of an interest in land within the statute of frauds. Ray v. Hawkins, 76 Nev. 164, 350 P.2d 998 (1960). The rationale of *Kreig* has no application to a deed of trust. In that case the court expressly distinguished the equitable lien created by a mortgage of real property from a transfer of title by trust deed. Id. 407, 408. We therefore rule that the lower court erred in concluding that the oral agreement to rescind did not fall within NRS 111.205(1).[2] We turn to consider the alternative conclusions of the district court.

(b) Although the trial court found that the parties did not contemplate a writing in order to perform the oral rescission agreement, it does not follow from such finding that the statute of frauds somehow becomes inapplicable to the oral agreement. Arguably, all agreements not in writing contemplate performance without a writing. This reasoning annihilates the

---

[1]NRS 111.205(1) provides:

1. No estate or interest in lands, other than for leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall be created, granted, assigned, surrendered or declared after December 2, 1861, unless by act or operation of law, or by deed or conveyance, in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized in writing.

[2]The Nevada federal court and the Supreme Courts of Michigan and Washington agree. Dasco, Inc. v. Am. City Bank & Trust Co., 429 F.Supp. 767 (D.Nev. 1977); Marshall v. Kenk, 218 N.W. 779 (Mich. 1928); Anderson v. Anderson, 223 P. 323 (Wash. 1924).

statutory requirement. The assertion of the statute by a party to an oral agreement which the law requires to be in writing is not a fraud. Zunino v. Paramore, 83 Nev. 506, 435 P.2d 196 (1967). The finding of the court below in this regard does not determine the applicability of the statute of frauds.

(c) As noted, the trial court ruled that the doctrine of part performance allowed enforcement of the oral rescission agreement notwithstanding the failure to comply with the statute of frauds. In order for that doctrine to defeat the statute, the terms of the oral agreement must be definitely established, the acts of the party, Greenspun, must be done with a view to the agreement being performed, and the party seeking enforcement must have performed or be ready and willing to perform all essentials of the agreement on his part. Evans v. Lee, 12 Nev. 393 (1877). These requirements must be established by an extraordinary measure or quantum of evidence. Jones v. Barnhart, 89 Nev. 74, 506 P.2d 430 (1973). Summa contends that the evidence is insufficient in regard to each requirement of the doctrine.

The terms of the oral rescission agreement were expressed through the trial testimony of three witnesses, Greenspun, Maheu, and Morgan. It is the assertion of Summa that such testimony is unworthy of credit since each witness gave inconsistent pretrial testimony. Although we must review the record in the light of the higher standard of proof, Lubbe v. Barba, 91 Nev. 596, 540 P.2d 115 (1975); Clark Sanitation v. Sun Valley Disposal, 87 Nev. 338, 487 P.2d 337 (1971), we do not deem the inconsistencies destructive of credibility and, therefore, pay the usual deference to the trial judge whose task it is to determine credibility and weight. Ewing v. Sargent, 87 Nev. 74, 482 P.2d 819 (1971); Carlson v. McCall, 70 Nev. 437, 271 P.2d 1002 (1954). The trial testimony of the mentioned witnesses clearly and definitely established the terms of the oral agreement.

It also was permissible for the trial court to find that Greenspun did not seek to enforce the land sale contracts until after the running of the statute of limitation in reliance on the oral agreement rescinding those contracts and that such forbearance, therefore, was referable to the oral agreement.

Still another requirement of the doctrine of part performance is that Greenspun, the party seeking enforcement, be ready and willing to perform all essentials of the agreement on

their part to be performed. The deed to the PVCC golf course contained two parcels of property not owned by Greenspun. When the oral rescission agreement was made, the parties were not aware of this defect in title. In any event, it appears from the record that Greenspun is willing and able to convey such parcels to Summa, and the judgment entered requires such conveyance as a precondition to the enforcement of the oral agreement to rescind. We, therefore, deem this requirement to have been met. Consequently, we agree with the court below that the oral rescission agreement is enforceable notwithstanding failure to comply with the statute of frauds.

2. Slander of Title.

In order to maintain an action for slander of title one must establish that the words spoken were false, that they were maliciously spoken, and that the plaintiff sustained some special pecuniary damage as a direct and natural result of their having been spoken. Potosi Zinc Co. v. Mahoney, 36 Nev. 390, 135 P. 1078 (1913).

The recording of a false document is a publication, Misco Leasing, Inc. v. Keller, 490 F.2d 545 (10th Cir. 1974), and a deed of trust which should have been cancelled is such a false document. Gudger v. Manton, 134 P.2d 217 (Cal. 1943),[3] *rev'd in part on other grounds,* Albertson v. Raboff, 295 P.2d 405 (Cal. 1956). The special pecuniary damage is that which directly and immediately results from the impairment of the vendability of the land caused by the publication of the disparaging matter. Shenefield v. Axtell, 545 P.2d 876 (Ore. 1976); Kidd v. Hoggett, 331 S.W.2d 515 (Civ.App.Tex. 1960); Gudger v. Manton, supra; McGuinness v. Hargiss, 105 P. 233 (Wash. 1909).

The court found that the recordation was with malice. However, it also concluded that the vendability of the property was not affected by the recordation of the deed of trust. Consequently, the claim for relief for slander of title was not established.

A slander of title is a tort. In addition to that claim for relief, the complaint also sought to remove the cloud upon Greenspun's title caused by the recordation of the deed of trust. The

---

[3] Cases collected in Annot. 39 A.L.R.2d 840 (1955), entitled "Recording of instrument purporting to affect title as slander of title."

theory of this claim for relief was that Summa recorded the trust deed in breach of the oral rescission agreement heretofore discussed. This cause of action is to recover damages for breach of contract and is the claim for relief which the district court found to have been established by the proof. Since the record supports that determination we may not disturb it.

3. Damages.

In an action to remove a cloud upon the title to real property it is permissible to assess as damages the attorneys' fees incurred incident to that action. Wright v. Rogers, 342 P.2d 447 (Cal.App. 1959); Dowse v. Doris Trust Co., 208 P.2d 956 (Utah 1949); Restatement (Second) of Torts § 633(1)(b) (1977). The court found that attorneys' fees in the amount of $53,204.61 were incurred by Greenspun for legal representation in this case and awarded them judgment for that sum. This award is contested since Greenspun did not seek to recover such fees by appropriate pleading, did not prove their liability therefor by admissible evidence and, finally, that the court's determination as to the amount of fees attributable to this case was arbitrary and in violation of our decision in Petersen v. Wiesner, 62 Nev. 184, 146 P.2d 789 (1944).

Although NRCP 9(g) requires the specific pleading of special damages, and applies to a disparagement of title case, Garver v. Public Service Company of New Mexico, 421 P.2d 788 (N.M. 1966), it does not follow that a failure to do so deprives the court of power to award such fees as damages. Indeed, NRCP 54(c) commands the court to "grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Grouse Cr. Ranches v. Budget Financial Corp., 87 Nev. 419, 488 P.2d 917 (1971); Checker, Inc. v. Zeman, 86 Nev. 216, 467 P.2d 100 (1970).

Proof of the fees incurred was through the use of a summary prepared by one accountant from books and records prepared by another accountant for Greenspun. The original papers were not made available for examination or copying, or both, as provided by NRS 52.275, and objection was interposed on that ground. It was error not to sustain that objection. However, in the context of this case, such error must be deemed harmless. The judge noted that he had presided over all proceedings in the case and was fully aware of the scope and complexity of the legal services rendered by counsel for Greenspun.

The inadmissible summary may have had little or no impact upon the court's determination of value. It was not as though counsel's services were performed beyond the observation of the court and needed testimonial or other evidentiary support for that reason. Rather, this case falls within the intendment of Artistic Hairdressers, Inc. v. Levy, 87 Nev. 313, 486 P.2d 482 (1971), where the court, in approving fees, noted that the trial "judge was well acquainted with, and able to determine the reasonableness of the fee from all the pleadings and records presented to him."

The sum of $53,204.61 was one half of the total amount incurred by Greenspun for this litigation, and for other legal work. It is asserted that the allocation was arbitrary and in violation of our decision in Petersen v. Wiesner, supra. In *Petersen*, the trial court made no finding regarding fees, and its award thereof admittedly included services which were not in connection with the case. The case at hand is different in each respect. The court made its finding, and the award was only for services rendered in the present litigation. Moreover, *Petersen* was decided before our adoption of the Nevada Rules of Civil Procedure, Rule 54(c) of which directs that the judgment shall grant the relief to which the party in whose favor it is rendered is entitled.

The court also awarded Greenspun the sum of $1,000,000 as punitive damages. NRS 42.010 designates the cases in which punitive damages may be awarded. It provides that "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

We heretofore have noted that an action to recover damages for slander of title sounds in tort, in contrast to an action to remove a cloud on title to property caused by a breach of an oral rescission agreement, which action arises from contract. The judgment in this case is based squarely upon findings that there was an oral rescission agreement and that Summa breached its obligation under that agreement to cancel and return the deed of trust. The court then specifically enforced the agreement by ordering expungement and return of the deed of trust. We are compelled to conclude that this action was for the breach of an obligation arising from contract and, therefore, not amenable to an award of punitive damages. Contractor's Safety Ass'n. v. California Comp. Ins. Co., 307 P.2d 626 (Cal. 1957).

Even if we erroneously were to treat this action as one in tort rather than arising from contract, the punitive damage award could not stand as a matter of law. The court found that Howard Hughes, not Summa, acted with malice and ill will toward Greenspun, and deliberately withheld information regarding the oral rescission agreement from Summa. Moreover, it found that Summa recorded the deed of trust without knowledge of the oral rescission agreement. Yet, it imposed liability for punitive damages upon Summa when it did not know of Hughes' wrongful conduct, did not authorize it, nor ratify it. This was grievous error. Skeels v. Universal C.I.T. Credit Corporation, 335 F.2d 846 (3d Cir. 1964); Lightner Mining Co. v. Lane, 120 P. 771 (Cal. 1911).

Finally, we note that the justification for punitive damages ceased upon the death of Howard Hughes. If the justification is to punish the offender and deter others, Hughes, found by the court to have been the offender, cannot be punished for he is dead. Punitive damage claims do not survive the tortfeasor, and cannot be sought either from his estate or from one vicariously liable. Allen v. Anderson, 93 Nev. 204, 562 P.2d 487 (1977).

4. Other assigned errors have been considered and found to be without merit.

The judgment below is affirmed in all respects, except as to the award of punitive damages which award is annulled.

MANOUKIAN and BATJER, JJ., concur.

GUNDERSON, J., with whom MOWBRAY, C. J., concurs, dissenting:

I cannot endorse the rationale through which my brethren here absolve Summa Corporation from paying punitive damages for its misconduct, as ascertained by the respected trial judge.

I note that the majority opinion explicitly recognizes two salient facts. First, my brethren say: "The trial testimony . . . clearly and definitely established the terms of the oral agreement [between Summa and the Greenspuns]." From this, it follows that the doctrine of part performance could be applied, and that the Statute of Frauds therefore constituted no absolute bar to the judgment on appeal. It also appears Summa ignored its clear and definite obligations to the Greenspuns.

Second, my colleagues acknowledge the Greenspuns were both willing and able to perform their part of the bargain breached by Summa. In other words, no default by the Greenspuns excused Summa.

My colleagues say, however, that Summa Corporation is no longer liable for punitive damages, because its agent, who acted maliciously on its behalf, has died. The only authority my respected colleagues have cited to support this result, i.e. Allen v. Anderson, 93 Nev. 204, 562 P.2d 487 (1977), does not in fact do so. True, in Allen v. Anderson, we held that an action for punitive damages *does not survive the tortfeasor.* Thus, we said, punitive damages may neither be recovered from the tortfeasor's estate, nor from one who, as a family member owning the car driven by the decedent, is made vicariously liable by NRS 41.440 for the tortfeasor's misconduct. In the instant case, Summa Corporation remains very much alive, and here has been called to account for tortious conduct committed for Summa's benefit, in regard to Summa's own obligations.

Neither can I endorse any suggestion that Summa is immune from punitive damages because, by its invasions of the Greenspuns' property interests, Summa repudiated contractual obligations to the Greenspuns. The fact remains that Summa's misconduct constituted a direct infringement of the Greenspuns' vested rights in real property. Summa had a legal duty not to act in regard to the Greenspuns' property, except in strict accord with its own contractual rights. The Greenspuns' action based on Summa's misconduct therefore clearly was "for the breach of an obligation not arising from contract." NRS 42.010.

Because the trial court could properly find Summa's misconduct to have been maliciously motivated, Summa's actions therefore fall within the ambit of Nevada's punitive damage statute. I would, thus, affirm the trial court in all respects.