UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 01-2152

MARK A. HENRIKSON,

Plaintiff - Appellant,

versus

FIRST UNION NATIONAL BANK, a federally
chartered Bank, formerly known as TMS
Incorporated, d/b/a The Money Store,

Defendant - Appellee.

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, District
Judge.  (CA-99-3586)

Argued:  May 7, 2002                    Decided:  January 14, 2005

Before WIDENER and MICHAEL, Circuit Judges, and C. Arlen BEAM,
Senior Circuit Judge of the United States Court of Appeals for the
Eighth Circuit, sitting by designation.

Affirmed in part, vacated in part, and remanded with instructions
by unpublished per curiam opinion.

Matthew Holmes Henrikson, BARNWELL, WHALEY, PATTERSON & HELMS,
L.L.C., Charleston, South Carolina, for Appellant.  Thomas Stuart
White, HAYNSWORTH, SINKLER, BOYD, P.A., Charleston, South Carolina,
for Appellee.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Mark A. Henrikson (plaintiff) appeals the district court's order granting First Union National Bank, et al. (defendants) summary judgment on plaintiff's breach of contract, interference with economic relationships, conversion, trespass, and violation of South Carolina Unfair Trade Practices Act claims.  We affirm in part, vacate in part, and remand with instructions.

I.

The following is a part of the opinion of the district court, with its footnotes numbered [DC], stating facts which were before the district court.

> In 1993, Plaintiff applied for a loan from The Money Source [or Money Store] for his home in Las Vegas, Nevada. Plaintiff and Defendants executed a note for $67,800.00 to be paid at a rate of 9.5% interest for 30 years.  The note was secured by a deed of trust establishing that the property would serve as collateral for the note.  Plaintiff was to make monthly payments of $570.10 by the tenth day of that month beginning in October 1993.
>
> Plaintiff was often delinquent in his payments from December of 1993 until Defendants foreclosed on the property in October of 1996.  By March of 1996, he had fallen five months behind in his payments.  At that time, Defendants transferred Plaintiff's file to John Symons in its foreclosure department.  Defendants issued a Notice of Default and Election to Sell Under Deed of Trust and sent this notice by certified mail to the property address on or before April 5, 1996.  Apparently, Plaintiff no longer lived in the Las Vegas home having moved to Charleston, South Carolina.  However, he was renting the property during this period.
>
> According to a computer maintained chronology referred to as "TPLS Comments" Symons spoke with Plaintiff on several occasions regarding his delinquency.  Plaintiff made an attempt to remedy the situation beginning in June by making four payments reducing his delinquency to four payments in a arrears.  However, Plaintiff failed to make any payments in July or August 1996.

2

Defendants issued a Notice of Trustee's Sale and sent this notice by certified mail to the Las Vegas property on August 13, 1996. The foreclosure sale was set for September 6, 1996. Symons spoke with Plaintiff in August regarding the account. The two worked out a payment plan and the scheduled foreclosure was postponed till October. However, the details of that plan are disputed. Plaintiff contends that he entered into an oral foreclosure agreement which entailed Plaintiff making double mortgage payments per month by the last day of each month until his account was current. Plaintiff further contends that this agreement was memorialized in writing by the forbearance agreement dated December 4, 1996. (Pl.'s Ex. 1). Defendants contend Plaintiff committed to make two full payments by September 5, 1996 and another by September 22, then two payments every month until the account was current.[1]

---

[DC1] The TPLS comments, relied on heavily by both parties, demonstrate the confusion as to the details of the payment arrangement. For example, one entry states that Plaintiff knew he must make two full payments by September 5, 1996 and another by September 22. (Def.'s Ex. H, 8/26/96). However, in a later entry Symons stated he was "lucky" he postponed the sale because Plaintiff did make full two payments, (Def.'s Ex. H, 9/15/96). Still, another entry states that Plaintiff must make another payment by October 24, 1996 before the scheduled date for sale because Plaintiff's "foreclosure had been postponed too many times already," (Def.'s Ex. H, 10/15/96).

Furthermore, when Defendants considered rescinding the sale which took place in October, a November 22, 1996 entry notes that the property was sold in October but payments were made after that date. (Def.'s Ex. H, 11/22/96.) Further, the entry states "therefore our sale invalid [sic]," and the account was reopened so that Defendants could follow whether Plaintiff would make two payments per month. (*Id.*) On December 4, 1996, the entry states:

> We will give customer benefit of the doubt, he had made previous [payment] arrangements [with] Symon to pay [two full payments per month]. He has adhered to this, we [received] [two full payments] in 9/96, 10/96, & 11/96 all by end of the month. Prepared [forbearance agreement] stipulating we will agree to [two full payments per month] to be [received] by the last day of [month] until

The district court concluded that defendants were estopped from asserting a statute of limitations defense, which we affirm for the reasons stated by the district court. But it granted summary judgment for defendants nonetheless since it found The Money Store had foreclosed on the property in late October and directed a sale of the same by the trustee, thus the Money Store had no right to make the forbearance agreement signed December 4 which it held did not relate back to the oral agreement made between the parties in August/ September.[2] It also held the oral agreement did not satisfy Nevada's statute of frauds.

We review <u>de novo</u> a district court's grant of summary judgment. <u>Murrell v. Ocean Mecca Motel, Inc.</u>, 262 F.3d 253, 256 (4th Cir. 2001). When considering the nonmoving party's evidence, the court must draw all reasonable inferences in his favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

II.

The first issue is whether plaintiff complied with South Carolina's three-year statute of limitations under S.C. Code Ann.

_____

account is current.

(Def.'s Ex. H, 12/4/96.)

[2] We note that the oral agreement took place in late August or early September. The district court used both in its opinion, we follow the parties lead and use September.

4

§ 15-3-530 (1997).  As the district court correctly found, the defendants are estopped from claiming a statute of limitations defense since plaintiff was led to believe by defendants that Charlotte was the proper location for acceptance of service.

The second issue is whether the forbearance agreement memorialized the September oral agreement between Symons and plaintiff, and moreover, whether it satisfied the statute of frauds.  The district court stated,

> While the court recognizes that this [forbearance] agreement is signed by a representative of Defendant and the details of the payment plan in the written agreement apparently coincide with Plaintiff's version of the payment plan ... the December 4 agreement does not relate back to bootstrap any agreements made before the sale, Plaintiff is left only with the oral agreement he contends established that he was required to make two payments per month until current.

We think, however, there is a genuine issue of material fact as to whether the December 4 forbearance agreement memorialized the September oral agreement, thereby satisfying the statute of frauds and precluding summary judgement.  Drawing a reasonable inference from plaintiff's proffered evidence, we believe that a jury could find an oral agreement between plaintiff and defendant in September, which was memorialized in December by the written forbearance agreement,[3] satisfying the statute of frauds.

---

[3] See attached Forbearance Agreement.

The forbearance agreement complies with Nevada's statute of frauds. Nev. Rev. Stat. Ann. §111.205 states, in pertinent part, that:

> No estate or interest in lands, other than for leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall be created, granted, assigned, surrendered or declared after December 2, 1861, unless by act operation of law, or by deed or conveyance, in writing, subscribed by the party creating, granting assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized in writing.

Nev. Rev. Stat. Ann. §111.210 provides:

> Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made.

As noted by the Nevada Court, the memoranda must adequately describe the real property and the terms must be sufficiently definite and certain to create an interest in the property. Butler v. Lovoll, 620 P.2d 1251, 1253 (N.V. 1980). Here, the forbearance agreement satisfies Nevada's statute of frauds by providing the location of the real property, the payment terms and dates, possible recourse on default, and the signature of the subscribing parties agent, Mrs. Townsley. The intention of the defendants, as evidenced by their forbearance agreement, was to prevent foreclosure by allowing plaintiff to double his monthly payments until current.

6

Finding the forbearance agreement satisfied Nevada's statute of frauds, there is conflicting evidence which creates a genuine issue of material fact as to whether the December 4th writing memorialized the September oral agreement. Examination of the forbearance document alone illustrates the possibility that it recalled the September oral agreement. The written December agreement references October payments- "Payments are to begin in October, 1996, and continuing until account has been brought completely current, and all attorneys' fees and costs have been paid." These payments, however, had already been received by The Money Store. There was no reason to refer to them unless the forbearance agreement related back to the oral agreement made in September. Also, the written agreement requires two payments per month, made no later than the end of each month. Plaintiff complied with these specific requirements in September, October, and November. The written forbearance document, however, was not received until December.[4] With the forbearance agreement referring to October payments and the plaintiff having complied with the terms of the document for months before its receipt, a genuine issue of material fact exists as to whether the written December 4th writing memorialized the September oral agreement.

---

[4] Plaintiff was making payments pursuant to the terms of the forbearance agreement before receipt of the December 4th writing. Unlike the oral forbearance agreement, which required double payments by the end of each month, the original note required the $570.10 payment by the 10th day of that month.

Moreover, because the testimony from the parties may be conflicting on this issue, and all reasonable inferences are to be taken in the nonmoving party's favor, summary judgement is not appropriate. Mrs. Townsley, defendant's employee, testified that the October 25, 1996 sale was invalid since the plaintiff had made two full payments, in accord with the oral agreement with Symons, in both September, October, and November. In addition, Mrs. Townsley, as noted in the December 4th writing[5], confirmed that defendants would "republish the property for sale" if the December payments were not made.[6] Symons also stated he was "lucky" he postponed the sale scheduled in September because Plaintiff made two full payments in that month. Even if contradicted by other evidence, this testimony illustrates a genuine issue of material fact as to whether the September oral agreement was memorialized by the December 4th written forbearance agreement.[7]

---

[5] "ANY DEFAULT OF THESE ARRANGEMENTS WILL RESULT IN THE IMMEDIATE RETURN TO THE FORECLOSURE ACTION." See attached Forbearance agreement.

[6] Plaintiff contends that he did not make the December payments because defendants decided to stand on the October foreclosure.

[7] Symons testified in his deposition:

Q. So Ms. Townsley would then have had the authority to modify and memorialize in writing what you had entered into orally?

A. Yes.

(Deposition of Symons, October 23, 2000, p.39)

Of equal significance, however, is the case of <u>Summa Corp. v. Greenspun</u>, 607 P.2d 569 (Nev. 1980).  Although <u>Summa Corp.</u> is not entirely clear that the oral forbearance agreement is within the statute of frauds.[8]  We will assume that it is for the moment. That case held that an oral agreement to surrender a secured lien under a deed of trust was within the statute of frauds, 607 P.2d at 572-3.  Even so, the case held that the oral agreement to surrender the lien was not invalidated by the statute of frauds because of part performance.  In the case at hand, there is no doubt that six payments were made on the deed of trust during September, October, and November, 1996, instead of the three which were due under the deed of trust.  This was consistent with the forbearance agreement, as admitted by the employees of The Money Store, Symons and Mrs. Townsley, with the only significant difference we can see in this record is whether any or three payments were due in September rather than two payments, as made by Henrikson.  Indeed, Mrs. Townsley, the employee of the Money Store, prepared the writing of December 4th, and Symons, who had initially made the agreement, testified as follows:

> Q.  Okay.  At some point you, on behalf of The Money Store, entered into a forbearance agreement with Mark to make payments?
>
> A.  Uh-huh.

---

[8] See <u>Summa Corp. v. Greenspun</u>, 655 P.2d 513 (Nev. 1983) at 514, reciting affirmance of trial court in its entirety.

Q. Yes?  Saying yes for the court reporter?

A. Yes.

Q. And you had the authority to do that?

A. Yes.

Q. And that was a standard part of your job, right?

A. Correct.[9]

So there is at least a question of material fact as to whether or not Henrikson should be allowed enforcement of the oral forbearance agreement, even if its provisions are not in writing.  The only question as to part performance is whether the six payments Henrikson made were as agreed upon, instead of seven payments, which Symons argues were agreed upon.  The understanding of Mrs. Townsley was obviously that the September payments were not under the forbearance agreement, but there is no dispute that the forbearance agreement was made.  There is also no dispute that six payments were made, thus there was evidence of part performance of the forbearance agreement.

The third issue is whether the defendants retained a legal or beneficial interest in the property, providing consideration for the December 4 forbearance agreement.  Defendants contend that there was no authority for The Money Store to enter into the forbearance agreement since the property had been sold and it, in

---

[9] Mrs. Townsley and Symons were foreclosure specialists of The Money Store with authority to make forbearance agreements.

10

turn, retained no interest in the house. "TMS did not own the property when it [the December 4th paper] was sent." Br., p.15. Assuming the forbearance agreement did in fact memorialize the alleged September oral agreement, defendants argue that when they sold the house any and all rights were transferred to control or modify instruments of the indebtedness regarding the property.[10] The argument goes that while The Money Store may have agreed to a rescission of the sale, it had no authority to make that very agreement. Since no rescission was accomplished, defendants claim they had no interest in the property.[11] The district court agreed and concluded that "Defendants had actually and justifiably exercised their rights under the deed of trust by selling the property and therefore any consideration, in this case Defendants' forbearance, failed. Thus Defendants could not enter into a forbearance agreement in this circumstance until after the sale had been rescinded."

We disagree with the defendants' assertion and the district court's holding that there is no genuine issue of material fact as to whether defendants retained a beneficial or legal interest in the property. Mrs. Townsley testified that the October 25, 1996

---

[10] On October, 25, 1996, the trustee's deed recited that the property was sold at public auction to the Bank of New York for $72,907.11.

[11] The Money Store now argues that Mrs. Townsley was "simply mistaken about the ability of TMS to enter into a forbearance agreement...." Br., p.13.

sale actually deeded the property to the defendants, that they held the property, transferred from their foreclosure department, in the real-estate owned department (REO).  A part of Mrs. Townsley's deposition follows:

Q: And when did the sale occur?

A: 10-25-96

...

Q: REO, what's that mean?

A: Real estate owned.

Q: And what does that mean?

A: After we foreclosed on the property, its transferred over to REO for sale.

Q: In Nevada the title reverts to the Money Store?

A: Yes

Q: And then you own it for some period of time until you sell it?

A: Yes.

From this testimony, it appears there is a question of material fact as to whether the beneficial or legal interest in the property was completely transferred on October 25, 1996 to the Bank of New York.  In this connection, we note that the Bank of New York claimed to be the beneficial owner of the indebtedness under a servicing agreement dated August 31, 1993, recorded February 25,

12

1994, although The Money Store claimed to be the beneficial owner in its notice of default recorded March 28, 1996.

Also relevant to this transaction is the fact that if the forbearance agreement existed, and according to this record there is little doubt that it did exist in some form or another, the sale of the property by the trustee, at the direction of the Money Store, was in violation of the forbearance agreement and thus the sale of the property by the trustee was without lawful authority for that reason. It is at once apparent that on the facts of this case in this record, it could easily be decided by a fact-finder that the Money Store sought to avoid its obligations under the forbearance agreement by ordering the trustee to sell the property, thus creating by its own unauthorized act a defense to enforcement of the forbearance agreement. We are of opinion that summary judgment should not have been granted to The Money Store on such facts without at least an unraveling of the facts and law under Nevada law, which was not done here. This gives us another "reason to believe that the better course would be to proceed to a full trial." Anderson v. Liberty Lobby, 477 U.S. at 255.

The judgment of the district court as to the application of the statute of limitations is accordingly affirmed. The summary judgment of the district court in favor of the defendants is accordingly vacated, and the case is remanded to the district court for proceedings not inconsistent with this opinion.

13

[The Money Store Logo]

December 4, 1996

FORBEARANCE AGREEMENT

Re:  TMS loan #: 71593917
     Property Address:   1959 Miner Way
                         Las Vegas, NV 89104

This forbearance agreement (repayment plan) is by and between Mark Henrikson, mortgagor, and The Money Store, mortgagee.  It is legal and binding and can be used in a court of law.  This agreement does not constitute any modification to the original Note.  It is a mutual agreement arrived at to assist the mortgagor in curing the default of the above referenced loan.  All payments submitted MUST be certified funds (cashier's check, money order, or Western Union) and MUST be submitted by the due date specified.

ANY DEFAULT OF THESE ARRANGEMENTS WILL RESULT IN THE IMMEDIATE RETURN TO THE FORECLOSURE ACTION.

The agreement is as such:

2 full monthly payments, totaling $1140.20, are to be made each month, to be received in our office no later than the last day of the month.
Payments are to begin in October, 1996, and continuing until account has been brought completely current, and all attorney's fees and costs have been paid.

All payments are to be submitted to:

The Money Store
Attn: Laurie Townsley- Asset Control Dept.
3464 El Camino Ave, Suite 110
Sacramento, CA 95821


_____   _____    [signed by Mrs. Townsley]  12-4-96
Mark Henrikson       Date        Laurie Townsley            Date

14

as agent for
The Money Store, Inc.