*1219 OPINION

Per Curiam:

This appeal requires us to determine whether the district court erred when it found that the Reno City Council’s (“Council”) decision to abandon certain real property was an arbitrary and capricious abuse of discretion. NRS 278.480(4) provides that a “governing body” may abandon property if it “is satisfied that the public will not be materially injured” by the proposed abandonment. For the reasons explained hereafter, we conclude that the district court failed to apply the proper statutory test for abandoning real property, and also failed to recognize the substantial evidence of record supporting the Council’s decision. Accordingly, we reverse the district court’s order and vacate the writ of mandamus.

FACTS

Nonparties Millicent Sandberg and Kathleen Apple (hereinafter “Applicants”) each own residential property on the east side of Circle Drive in Reno. Their properties are divided by an unimproved right-of-way that serves as the eastern terminus of Crocker Way.[1] Respondent Estate of Howard Wells (“Wells”) owns a large parcel of property to the east of the Applicants’ property and the right-of-way. The right-of-way directly abuts Wells’ property, which is accessed by Brown Street to the north.
Sometime during the summer of 1992, the Applicants filed an *1220 application for abandonment of the right-of-way with the Reno Planning Commission. The Planning Commission held hearings on the application on September 2, September 16, and October 21, 1992. The Applicants, supported by numerous neighborhood residents, argued that the right-of-way should be abandoned to them because it served no purpose to the City. As a collateral matter, the Applicants contended that their use and maintenance of the right-of-way would confer an aesthetic benefit upon the surrounding neighborhood. Wells objected to the proposed abandonment because it would “tak[e] away potential opportunities to develop” its property into smaller residential lots.
The Planning Commission was informed by staff that the City Fire and Engineering Departments did not oppose abandonment because the right-of-way did not provide essential access to emergency vehicles or the public, and because Wells could fully develop its property by use of the Brown Street access. After some discussion of a private compromise between the parties, the Commission unanimously recommended that the abandonment application be approved. Wells thereafter appealed the Commission’s recommendation to the Council.
Wells’ primary argument before the Council was that abandonment of the right-of-way would detrimentally affect its development opportunities, though Wells refused to commit to developing its property, if at all, within a specified period of time. Wells also contended that traffic on Brown Street would increase if it were forced to develop its property without use of the right-of-way, and that emergency vehicle access to the developed property would be enhanced if the right-of-way was preserved. After lengthy discussions regarding the impact on Wells’ future development, the Council specifically found that the public would not be “materially injured” by the abandonment and unanimously adopted the Planning Commission’s recommendation to approve the application for abandonment. Shortly thereafter, Wells challenged the Council’s action by filing a petition for a writ of mandamus in the district court.
During a short hearing before the district court, Wells argued that the Council erred because its decision affected both the value and marketability of Wells’ property and created dangers associated with increased traffic on Brown Street and decreased accessibility for emergency vehicles. Our review of the record indicates that Wells repeatedly emphasized the lack of public benefit resulting from the Council’s decision.[2] The district court was per *1221 suaded by Wells’ argument and granted the petition for a writ of mandamus.[3] This appeal followed.

DISCUSSION

There are two basic issues requiring resolution on appeal: (1) whether the district court erred in analyzing the Council’s decision in terms of the “public benefit” it might provide, rather than the statutorily-prescribed “material injury” analysis; and (2) whether the Council’s decision is supported by substantial evidence of record.
In considering the first issue, whether the district court’s use of a public benefit analysis was appropriate, we note that the controlling statute is clear and unambiguous on its face. NRS 278.480(4) provides that a governing body may abandon property if it “is satisfied that the public will not be materially injured” by the proposed abandonment. We have previously rejected the argument that there is a “public purpose” component to the abandonment statute. L&T Corp. v. City of Henderson, 98 Nev. 501, 503, 654 P.2d 1015, 1016 (1982). We therefore conclude that the district court erred when it focused on the benefits of abandonment, rather than any “material injury” the abandonment may cause. The lower court did mention, without discussion, that it found a “public detriment” associated with the abandonment. However, the court’s unsupported conclusory remark does not constitute a well-reasoned finding of “material injury to the public” for three reasons: (1) the “injury” the district court refers to is nonexistent, and may spring into existence, if at all, only if and when Wells decides to proceed with the development of its property; (2) the legislature’s use of “material” as a modifier of “injury” implies that a mere detriment is *1222 insufficient to defeat a proposed abandonment; and (3) the district court failed to cite any dispositive facts in support of its remark.[4]
Having concluded that the district court erred when it failed to consider the proposed abandonment in light of the “material injury” standard prescribed by statute, we must also evaluate the court’s finding that the Council’s decision was arbitrary and capricious. In Tighe v. Von Goerken, 108 Nev. 440, 833 P.2d 1135 (1992), we noted that “ ‘the essence of the abuse of discretion, of the arbitrariness or capriciousness of governmental action ... is most often found in an apparent absence of any grounds or reasons for the decision,’ ” or in other words, “ ‘[w]e did it just because we did it.’” Id. at 442-43, 833 P.2d at 1136 (quoting City Council v. Irvine, 102 Nev. 277, 280, 721 P.2d 371, 372-73 (1986)). Additionally, we have previously' accepted the definitions of arbitrary and capricious, respectively, as “baseless” or “despotic” and “‘a sudden turn of mind without apparent motive; a freak, whim, mere fancy.’ ” City Council v. Irvine, 102 Nev. 277, 278-79, 721 P.2d 371, 372 (1986) (quoting The Oxford Universal Dictionary). Our review of the record convinces us that the district court’s finding is erroneous.
“Substantial evidence” is that which “a reasonable mind might accept as adequate to support a conclusion.” See, e.g., Ruggles v. Public Service Comm’n, 109 Nev. 36, 40, 846 P.2d 299, 302 (1993). Substantial evidence need not be voluminous; and in this case, it may be inferentially shown by the lack of evidence that abandonment of the right-of-way would impose a material injury upon the public. The Council was informed, and we have no reason to question the evidence on appeal, that the right-of-way does not currently provide access to any party or emergency vehicles (nor will it be necessary for any party or emergency vehicles to access the property through the right-of-way if the property is developed in the future), and the City has no intention of developing or using the right-of-way. In sum, reasonable minds may properly conclude that the abandonment does not result in a material public injury and therefore, the *1223 Council’s decision is supported by substantial evidence. That evidence, coupled with the City’s express disinterest in owning and maintaining an unused, unnecessary right-of-way, requires us to reverse the district court’s order.

CONCLUSION

For the reasons discussed above, and given the deferential standard of review accorded to the actions of municipalities, we reverse the district court’s order and vacate the writ of mandamus.

 The right-of-way, which was dedicated to the City approximately fifty years ago when the original subdivision was developed, is described by Reno Planning Commission staff as follows:
[T]his section of Crocker Way is unconstructed and undeveloped. The right-of-way is an existing dirt lot with an unkempt appearance. The proposed section of the right-of-way to be abandoned does not line up with the existing street section of Crocker Way. At one time, there may have been plans to connect Circle Drive with Bret Harte Avenue via Crocker Way. According to City records, the homes located to the east of this section of right-of-way were built in the 1940’s. It was apparently determined during this period that the road would not be extended. This City has no plans to extend Crocker Way.

 As one example, consider the following argument propounded by Wells’ counsel:
There is nothing in that record that we can point to that says the *1221 abandonment of this road is going to serve the neighborhood in a better fashion, it’s going to make traffic safer, it’s going to make the neighborhood better, it’s going to be of public good. There is absolutely nothing in the record.
The only thing they can point to is: Well, it’s a vacant lot, it’s an eyesore.
That’s not to the public benefit. I mean, that is to the benefit of [the Applicants].

The following statement reveals the basis for the district court’s decision:
I think you have to acquire [sic], or I have to acquire [sic] as to whether any public benefit would be granted by upholding the City Council’s actions. I am unable to find any public benefit. I find private benefit, but I find no public benefit.

 On appeal to this court, Wells’ failed to address the district court’s error, insisting instead that:
The central issue to be determined in this appeal is whether it was fair and whether substantial evidence exists to allow Crocker Way to be abandoned for the sole purpose of giving [the Applicants] more yard and property in light of the documented adverse effects such abandonment has on WELLS’ property, the only property served by Crocker Way.