JOHN KEVIN WRIGHT, APPELLANT, *v.* THE STATE OF NEVADA, DEPARTMENT OF MOTOR VEHICLES, RESPONDENT.

No. 41427

May 12, 2005                                    110 P.3d 1066

*Law Offices of John G. Watkins* and *John Glenn Watkins,* Las Vegas, for Appellant.

*Brian Sandoval,* Attorney General, and *Brent D. Michaels,* Deputy Attorney General, Carson City, for Respondent.

Before MAUPIN, DOUGLAS and PARRAGUIRRE, JJ.

## OPINION

*Per Curiam:*

In this appeal, we clarify that the decision in *State, Department of Motor Vehicles v. McLeod*[1] does not limit the factors that an of-

---

[1]106 Nev. 852, 801 P.2d 1390 (1990).

ficer may consider when determining whether reasonable grounds exist for an evidentiary test. Substantial evidence supports the Department of Motor Vehicles' (DMV) revocation of appellant's driver's license. We, therefore, affirm the district court's order denying appellant's petition for judicial review of the determination.

## FACTS

In January 2002, Officer Lewis of the Henderson Police Department proceeded to the scene of a rear-end motor vehicle accident in Henderson, Nevada. Upon arrival, Officer Lewis observed appellant John Kevin Wright, the owner of the rear vehicle, standing in the way of oncoming traffic. Officer Lewis instructed Wright to proceed toward the patrol unit.

Officer Lewis noted that Wright's gait was unsteady, as if he was unsure of his next step, and that Wright needed to steady himself by placing one hand on a vehicle. In response to Officer Lewis's inquiry as to what happened, Wright turned and moved away. Officer Lewis then instructed him to come back to the patrol unit, after which Officer Lewis, at some point, noted a moderate smell of alcohol. Wright admitted to having consumed about "four drinks." Wright then submitted to, and failed, a series of standardized field sobriety tests. During the tests, Wright informed Officer Lewis that he had knee problems and had undergone several knee surgeries. Officer Lewis took that information into account when administering the field sobriety tests. During a horizontal gaze nystagmus test, Officer Lewis observed six indicators of intoxication that would not be affected by knee problems. After confirming that Wright had been in physical control of the rear vehicle, Officer Lewis placed Wright under arrest for driving under the influence of intoxicating liquor and for following the front vehicle too closely, which resulted in the accident.

Officer Lewis transported Wright to the Henderson Detention Center, where a nurse obtained a blood sample from Wright's arm. Subsequent laboratory testing confirmed that on the night in question Wright's blood alcohol content was 0.23 gram per 100 milliliters of blood.

Under NRS 484.385(2), Officer Lewis submitted a certificate of cause, with the evidentiary test result attached, to the DMV, requesting that Wright's driver's license be revoked. The DMV accordingly revoked Wright's license.

After conducting an administrative hearing, a DMV hearing officer upheld the revocation of Wright's driving privileges. The DMV hearing officer concluded that Officer Lewis had reasonable grounds to believe that Wright was driving while under the influence of intoxicating liquor and that the evidentiary test revealed a concentration of 0.10 or more of alcohol in Wright's blood.

The district court denied Wright's subsequent petition for judicial review. Wright appeals.

## DISCUSSION

''This court's role in reviewing an administrative decision is identical to that of the district court: to review the evidence presented to the agency in order to determine whether the agency's decision was arbitrary or capricious and was thus an abuse of the agency's discretion.''[2] In our review, we are limited to the record and may not substitute our judgment for that of the agency regarding questions of fact.[3] The question this court must address is whether substantial evidence supports the agency's decision.[4] ''Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.''[5] Additionally, ''[s]ubstantial evidence need not be voluminous'' and may even be ''inferentially shown by [a] *lack* of [certain] evidence.''[6] The burden on appeal is on the party opposing the administrative decision.[7]

### Reasonable grounds for sobriety testing

Wright first contends that the officer ordered the evidentiary blood test without reasonable grounds. We disagree.

A person is deemed to have consented to an evidentiary test of blood, urine, or breath under NRS 484.383(1) if an officer has reasonable grounds to believe that the person is under the influence of alcohol.[8] Wright contends that this court, in *McLeod,*[9] held that the reasonable-grounds requirement is satisfied only when an officer smells alcohol on an individual's breath and the individual has bloodshot eyes. Wright argues that, because he did not have bloodshot eyes, Officer Lewis did not have reasonable grounds to request that he submit to an evidentiary test.

---

[2]*United Exposition Service Co. v. SIIS,* 109 Nev. 421, 423, 851 P.2d 423, 424 (1993); *see also* NRS 233B.135 (setting forth standard for judicial review of an administrative agency's decision).

[3]*United Exposition,* 109 Nev. at 423-24, 851 P.2d at 424.

[4]*Id.* at 424, 851 P.2d at 424.

[5]*Id.* at 424, 851 P.2d at 424-25.

[6]*City of Reno v. Estate of Wells,* 110 Nev. 1218, 1222, 885 P.2d 545, 548 (1994).

[7]NRS 233B.135(2).

[8]NRS 484.383(1).

[9]106 Nev. at 855, 801 P.2d at 1392.

Wright, however, misperceives this court's holding in *McLeod*. The indications of intoxication discussed in *McLeod* serve only as examples of the factors that may establish reasonable grounds to require that a person submit to an evidentiary test. An officer may consider many other factors when determining whether reasonable grounds exist for an evidentiary test, even when a person does not have bloodshot eyes or smell of alcohol. *McLeod* did not in any way limit the factors that officers may use to determine whether there are reasonable grounds to believe that a person is impaired.

Substantial evidence supports Officer Lewis's decision to require an evidentiary test. First, although Wright contends that he did not have bloodshot eyes, there was no testimony to this effect. Second, Wright was involved in a car accident in which he rear-ended another vehicle. Third, Officer Lewis smelled a moderate odor of alcohol on Wright, and Wright admitted that he had consumed about four drinks that day. Fourth, Officer Lewis testified that Wright's gait was unsteady, as if he was unsure of his next step, and that Wright had to place his hands on the car several times to steady himself. Finally, Wright performed a series of field sobriety tests, including a horizontal gaze nystagmus test, all of which he failed. Accordingly, we conclude that Officer Lewis had adequate grounds to require that Wright submit to an evidentiary test.

*Reliability of field sobriety tests*

Wright next argues that the field sobriety tests, as administered, were unreliable indicators of intoxication and, therefore, Officer Lewis improperly relied on them to establish reasonable grounds for evidentiary testing. Central to Wright's argument is the National Highway Transportation Safety Administration's (NHTSA) recognition that persons with physical disabilities will have difficulty performing tests that are designed to evaluate a person's balance. Wright, however, informed Officer Lewis of his knee problems before submitting to the field sobriety tests, and Officer Lewis considered Wright's knee problems when he administered the tests.

Wright asserts that the NHTSA Student Manual requires that officers administer tests in a ''standardized manner,'' and that the validity of the test results is compromised if any element of the test is changed. Wright further asserts that the student manual does not permit an officer to modify a field sobriety test by considering physical disabilities. Wright, however, fails to provide a copy of the manual in the record, nor is there any evidence that Officer Lewis modified any of the tests. Wright did not cross-examine Officer Lewis at the hearing on the type of tests that were administered or

how Wright's knee problems were taken into consideration. Moreover, Officer Lewis testified that he administered several tests that did not depend on Wright's ability to balance, including the horizontal gaze nystagmus test, which Wright failed.

On appeal, Wright contends for the first time that no evidence suggested that Officer Lewis had been properly trained to administer field sobriety tests and that, therefore, the tests do not constitute reliable evidence of Wright's intoxication. Even if Wright had properly preserved his argument, which he did not, Wright fails to provide any facts or law supporting his contention.[10] Accordingly, we reject Wright's challenges to the field sobriety tests conducted in this case.

### DMV's revocation authority

Wright contends that the DMV lacked jurisdiction to initiate a driver's license revocation proceeding because the DMV had insufficient information. We view this as a separate challenge to whether substantial evidence supported the revocation decision. Wright also contends that the DMV did not receive valid documentation pertaining to his arrest and, therefore, there was insufficient evidence supporting revocation. Wright further argues that the officer's certification of cause and the evidentiary test result were contradictory. Specifically, Wright notes that Officer Lewis signed the certification of cause, stating that Wright had an alcohol content of "0.10 percent or more by weight in his blood," while NRS 484.385(2) required that the person charged have "a concentration of alcohol of [0.10] or more in his blood."[11] The term "by weight" was deleted from the statute in 1999.[12]

The DMV counters that the previous standard, "0.10 percent or more by weight," has the same meaning as the new standard, "concentration of alcohol of [0.10] or more in his blood." We agree.

NRS 484.038 defines the new standard as "[0.10] gram or more of alcohol per 100 milliliters of the blood."[13] The previous standard was defined as "a concentration of alcohol in the blood . . . of a

---

[10]*See SIIS v. Buckley,* 100 Nev. 376, 382, 682 P.2d 1387, 1390 (1984) (declining to consider assignments of error not supported by citation to relevant authority); *see also* NRAP 28(a)(4) (requiring that appellant provide argument in opening brief that includes reasons for contentions "with citations to the authorities, statutes, and parts of the record relied on").

[11]In 2003, the Nevada Legislature amended NRS 484.385, replacing 0.10 with 0.08. See 2003 Nev. Stat., ch. 421, § 9, at 2562.

[12]*See* 1999 Nev. Stat., ch. 480, § 6, at 2451; *id.* § 13, at 2455.

[13]In 2003, the Nevada Legislature amended NRS 484.038, replacing 0.10 with 0.08. See 2003 Nev. Stat., ch. 421, § 5, at 2559.

person of 0.10 gram or more by weight of alcohol . . . [p]er 100 milliliters of his blood.''[14] The DMV also suggests that, because ''gram'' is a measurement of weight, the term ''by weight'' in the previous standard was merely redundant wording that has since been removed. The DMV, therefore, contends that the two standards are similarly defined and have the same meaning.

Nevada law directs the DMV to revoke a driver's license in certain situations. Under NRS 484.385(2), when an evidentiary test reveals that an individual ''had a concentration of alcohol of [0.10] or more in his blood'' while driving a motor vehicle, the police officer must submit to the DMV a copy of the evidentiary test result and ''a written certificate that he had reasonable grounds to believe that the person had been driving or in actual physical control of a vehicle with a concentration of alcohol of [0.10] or more in his blood.'' The DMV, upon receiving the certificate, and ''after examining the certificate and copy of the result of the chemical test,'' and ''finding that revocation is proper,'' must revoke the person's driving privileges.[15] That is what occurred here.

To explain, the record demonstrates that Officer Lewis relied on the evidentiary test result, which meets the applicable standard, to complete the certification of cause. Indeed, at the hearing, Officer Lewis testified that he did not submit, or even sign, the certification of cause until he received the evidentiary test result from the laboratory. Thus, the certification of cause is based on the evidentiary test result, which established that Wright was significantly over the legal alcohol limit. Accordingly, because there is substantial evidence in the record supporting the DMV's revocation decision, Wright's argument is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the district court's order upholding the DMV's revocation of appellant's driver's license.

---

[14]NRS 484.0135 (1989) (amended 1999), *replaced in revision by* NRS 484.038.

[15]NRS 484.385(3).