JOHN P. HORGAN, III, AND DOROTHY L. HORGAN; ANDREW M. SPIEKER AND GAIL S. SPIEKER; CATHY J. McAULIFFE; CHARLES J. WILSON AND DEBRA S. WILSON, APPELLANTS/CROSS-RESPONDENTS, v. D. D. FELTON AND PAUL J. FELTON, PARTNERS OF THE DIANNE DAISS FELTON FAMILY LIMITED PARTNERSHIP OF 1997, A NEVADA LIMITED PARTNERSHIP; JANE THORNTON DAISS, AS TRUSTEE OF THE ROBERT M. DAISS AND JANE THORNTON DAISS 1981 TRUST NO. 1; JEPSEN PROPERTIES, INC., A NEVADA CORPORATION; AND EDWARD F. BIGGS AND CHARLOTTE L. BIGGS, AS TRUSTEES OF THE BIGGS FAMILY TRUST DATED AUGUST 12, 1986, RESPONDENTS/CROSS-APPELLANTS.

No. 45551

November 21, 2007 170 P.3d 982

*Lionel Sawyer & Collins* and *Dan C. Bowen* and *Janet S. Bessemer*, Reno, for Appellants/Cross-Respondents Horgans and Spiekers.

*Michael B. Springer*, Reno, for Appellants/Cross-Respondents McAuliffe and Wilsons.

*Richard Glasson*, Lake Tahoe, for Respondents/Cross-Appellants Feltons and Daiss.

*Hale Lane Peek Dennison & Howard* and *Patricia C. Halstead* and *Richard L. Elmore*, Reno, for Respondents/Cross-Appellants Biggs and Jepsen Properties.

Before the Court EN BANC.

## OPINION

By the Court, CHERRY, J.:

In this case, we primarily reexamine our decision in *Sandy Valley Associates v. Sky Ranch Estates*,[1] which states that attorney fees as damages are available in cases clarifying or removing a cloud on title to property. We now retreat from that statement and hold that in cases concerning title to real property, attorney fees are only allowable as special damages in slander of title actions, not merely when a cloud on the title to real property exists.

### *FACTS*

The underlying litigation in this case involves the property rights of seven neighboring homeowners in the Lake Tahoe community of Glenbrook, Nevada. Respondents/cross-appellants Jane Thornton Daiss, as trustee for the Robert M. Daiss and Jane Thornton Daiss 1981 Trust No. 1, Jepsen Properties, Inc., and Edward and Charlotte Biggs, as trustees of the Biggs Family Trust, own residences that abut a beach in Glenbrook. Appellants/cross-respondents John and Dorothy Horgan, Andrew and Gail Spieker, Cathy McAuliffe, and Charles and Debra Wilson own residences east of those beachfront properties, separated from them by Golf Links Road. Respondents/cross-appellants Dianne and Paul Felton own the remaining residence. The Feltons' residence, like that of the appellants/cross-respondents, is located to the east of Golf Links Road and does not abut the beach.

---

[1]117 Nev. 948, 955, 35 P.3d 964, 968-69 (2001).

Golf Links Road is a roadway easement providing access to the homeowners' respective residences. The recreational beach easement is comprised of the "sand" of the beach area, the "slope" from the beach area up to the residences above, and the "bluff," which is the area above the slope and the sand just west of the property lines of Daiss, Jepsen Properties, and the Biggs. All of the parties' parcels are benefited by the recreational beach easement, except for the Feltons'. Daiss currently owns the recreational easement, which is referred to by the parties as Parcel 7.

The Horgans initiated this litigation by filing a complaint for declaratory relief and to quiet title, naming as defendants only two other property owners. By the time of trial, the owners of all affected parcels were involved in the litigation.

In the litigation before the district court, the appellants/cross-respondents, collectively referred to as the Horgan group, sought a declaration that they were the owners of Golf Links Road, an order that Daiss and the Feltons remove improvements that the Horgan group alleged impeded their use of the road, and an order requiring that Daiss and the Feltons re-grade and repave the road. The Horgan group also sought declaratory relief regarding the extent of both their use of the recreational beach easement and the boundaries thereof.

Jepsen Properties and the Biggs counterclaimed against the Horgan group for declaratory relief as to the road easement and for adverse possession as to the recreational easement. Jepsen Properties and the Biggs also cross-claimed against Daiss and the Feltons for adverse possession as to the recreational easement.

After the trial concluded, the district court entered its judgment, finding that the Horgan group and their predecessors have continuously used the recreational easement. Thus, their right to the recreational easement (whether by prescription, adverse possession, abandonment, or any other theory under which ownership to real property can change without a deed) had not been extinguished. In its judgment, the district court concluded that the original grantor's reservation of the recreational easement and the right to prescribe reasonable regulations necessary for the safe and proper enjoyment of the easement "runs with the land." Further, the district court concluded that this reservation of the recreational easement provided a sufficient basis on which the court could fashion new rules effectuating the equitable resolution of the parties' disputes over the easement's use. The district court then promulgated rules pertaining to the easement's use and awarded attorney fees jointly and severally against respondents/cross-appellants, collectively referred to as the Daiss group, in favor of the Horgan group as follows: $187,814.82 to the Horgans;

$20,031 to the Spiekers; and $12,978.50 to McAuliffe and the Wilsons. The parties' appeal and cross-appeals followed.

## DISCUSSION

While the parties raised numerous issues below, on appeal and cross-appeal, we primarily address whether Jepsen Properties and the Biggs extinguished a portion of the recreational easement; whether the right to promulgate rules concerning the reasonable use of the recreational easement under the deed survived the grantor and vested in the servient tenant; whether the district court has rulemaking authority under the deed; and whether attorney fees are appropriate in this case.

### Standard of review

The district court's findings of fact will be upheld unless they are not supported by substantial evidence or are clearly erroneous.[2] Substantial evidence is evidence that " 'a reasonable mind might accept as adequate to support a conclusion.' "[3] Such evidence need not be voluminous and may be inferentially shown by a lack of certain evidence in the record.[4] Pure legal issues are reviewed de novo.[5]

### Extinguishment of the easement

On cross-appeal, Jepsen Properties and the Biggs argue that they extinguished a portion of the recreational easement by adverse use. We disagree.

An easement may be extinguished by, among other ways, prescription, provided the use is adverse to the easement's owner and such adverse use is, for the period of prescription, continuous and uninterrupted.[6] Based on the lack of evidence in the record showing that Jepsen Properties and the Biggs adversely, continuously used any portion of the recreational easement over the required

[2]*Jordan v. Bailey*, 113 Nev. 1038, 1044, 944 P.2d 828, 832 (1997).

[3]*Yamaha Motor Co. v. Arnoult*, 114 Nev. 233, 238, 955 P.2d 661, 664 (1998) (quoting *State, Emp. Security v. Hilton Hotels*, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986)).

[4]*Wright v. State, Dep't of Motor Vehicles*, 121 Nev. 122, 125, 110 P.3d 1066, 1068 (2005).

[5]*Las Vegas Downtown Redev. v. Crockett*, 117 Nev. 816, 822, 34 P.3d 553, 557 (2001).

[6]*Brooks v. Jensen*, 87 Nev. 174, 177, 483 P.2d 650, 652-53 (1971).

five-year prescription period, we conclude that substantial evidence supports the district court's determination that Jepsen Properties and the Biggs failed to extinguish any part of it.[7]

Specifically, the district court found that until recently most of the residences situated on the parties' parcels were vacation homes and not occupied on a year-round basis. Because each owner occupied his property only part of the time, the owners, or their predecessors in interest, of the parcels closer to the bluff could act, and to some extent did act, with a full intention to exclude the backlot owners from using the recreational easement. In particular, some of the Daiss group installed sprinkler systems and landscaping on those parts of the bluff and slope between their respective parcels and the sand. Likewise, some of the Daiss group erected fences on or across the bluff.

However, because the Horgan group was able to climb over or walk around the fences erected near the bluff, their access to the bluff area of the recreational easement was not completely obstructed. Likewise, evidence adduced at trial indicated that the Horgan group and their predecessors had made use of the recreational easement including strolling, sitting, reading, walking, picnicking, swimming, boating, and hitting golf balls. Based on the above evidence, we conclude that substantial evidence supports the district court's finding that Jepsen Properties and the Biggs failed to demonstrate that the easement was extinguished.

*Rulemaking authority of the servient landowner*

The parties dispute whether Jane Thornton Daiss, as the owner of the servient estate, has authority to make reasonable rules for the recreational easement's use. The Horgan group argues that the language of the easement grant itself is clear and unambiguous in its failure to provide for a right of rulemaking in the grantor's successors and assigns. The grant provides, in part,

> [S]aid easement is . . . subject to the right of the First Party to prescribe any and all reasonable regulations necessary for the safe and proper enjoyment of the easement hereby granted to the Second Parties . . . .

The Horgan group argues that the grantor's reservation of the rulemaking authority was clearly reserved to only "the First Party," *i.e.*, the original grantor, and was a personal right that was not intended to pass to the grantor's heirs, successors, and assigns. We disagree.

---

[7]*See* NRS 11.150.

 █

The burden of an easement is appurtenant, so that the rights or obligations of servitude are tied to ownership or occupancy of a particular parcel of land and not tied to an individual.[8] Here, Jane Thornton Daiss owns the servient estate and, therefore, has the right to prescribe any and all reasonable regulations necessary for the safe and proper enjoyment of the easement.[9]

 █

While we conclude that the right to promulgate rules concerning the reasonable use of the recreational easement under the deed survived the grantor and vested in the servient tenant, the clear language of the deed does not provide the district court with rule-making authority under the deed. Accordingly, the district court erred in promulgating specific rules for the easement's use. We therefore reverse the portion of the district court's order that promulgated specific rules for the recreational easement's use. While the district court may determine whether the servient tenant's rules are reasonable, the district court has no rulemaking authority under the deed in the first instance.

### Attorney fees as special damages

 █

The district court ordered the Daiss group to jointly and severally pay the Horgan group's attorney fees as special damages. Generally, attorney fees are not recoverable absent a statute, rule, or contractual provision to the contrary.[10] As an exception to the general rule, a district court may award attorney fees as special damages in limited circumstances.

Here, the Horgan group members argue that they successfully removed a cloud upon the title to their easement rights over the bluff portion of the recreational easement and therefore the district court had the authority to award attorney fees as special damages. To support that contention, they cite to this court's statement in *Sandy Valley Associates v. Sky Ranch Estates* that "[a]ttorney fees may . . . be awarded as damages in those cases in which a party incurred the fees . . . *in clarifying or removing a cloud upon the title to property.*"[11] We take this opportunity to clarify the language

---

[8]*Seven Lakes Development Co. v. Maxson*, 144 P.3d 1239, 1245 (Wyo. 2006).

[9]*Boydstun Beach Ass'n v. Allen*, 723 P.2d 914, 920 (Idaho Ct. App. 1986) (citing Restatement (First) of Prop.: Servitudes § 486 cmt. a (1944)); *New York Cent. R. Co. v. Ayer*, 136 N.E. 364, 365 (Mass. 1922); *Shingleton v. State*, 133 S.E.2d 183, 187-88 (N.C. 1963).

[10]*Rowland v. Lepire*, 99 Nev. 308, 315, 662 P.2d 1332, 1336 (1983).

[11]117 Nev. 948, 957, 35 P.3d 964, 970 (2001) (emphasis added).

in *Sandy Valley* and other cases as to when attorney fees may be awarded as special damages in cloud of title cases.

In making the above quoted statement in *Sandy Valley*, this court cited *Michelsen v. Harvey*, which held that an award of attorney fees is permissible, but not mandatory, when a property owner litigates to remove a cloud on title.[12] *Michelsen*, in turn, relied upon this court's original decision in *Summa Corp. v. Greenspun (Summa I)*.[13]

In *Summa I*, appellant Summa Corp. made a loan to Herman and Barbara Greenspun that was secured by a promissory note and deed of trust.[14] Summa backed out of the deal and agreed to return those two securing instruments.[15] Despite that agreement, however, Summa recorded the deed of trust and effectively encumbered two thousand acres of the Greenspuns' property.[16] Subsequently, the Greenspuns sued Summa for slander of title and breach of contract, ultimately obtaining a judgment in the district court that included an award of punitive damages and attorney fees.[17]

On appeal, this court determined that the Greenspuns' slander of title claim was not supported by the evidence.[18] Yet in spite of this conclusion, this court affirmed the award of attorney fees because the Greenspuns filed their cause of action to remove a cloud upon title.[19] In doing so, we indicated that ''[i]n an action to remove a cloud upon the title to real property[,] it is permissible to assess as damages the attorneys' fees incurred incident to that action.''[20]

The cases cited in *Summa I* for this proposition, however, actually hold that in an action for slander of title, the plaintiff may

---

[12]110 Nev. 27, 30, 866 P.2d 1141, 1142 (1994).

[13]96 Nev. 247, 607 P.2d 569 (1980), *modified on reh'g*, 98 Nev. 528, 655 P.2d 513 (1982).

[14]*Id.* at 250-51, 607 P.2d at 570-71.

[15]*Id.*

[16]*Id.*

[17]*Id.* at 250-55, 607 P.2d at 571-74.

[18]*Id.* at 254, 607 P.2d at 573.

[19]*Id.* at 255, 607 P.2d at 573-74.

[20]*Id.* (citing *Wright v. Rogers*, 342 P.2d 447 (Cal. Dist. Ct. App. 1959); *Dowse v. Doris Trust Co.*, 208 P.2d 956 (Utah 1949); Restatement (Second) of Torts § 633(1)(b) (1977)). On rehearing in 1982, this court ultimately determined that the Greenspuns' slander of title action was supported by the evidence and attorney fees incurred in removing the cloud from the title qualify as special damages in an action for slander of title. *Summa Corp. v. Greenspun (Summa II)*, 98 Nev. 528, 655 P.2d 513 (1982). However, *Michelsen*, which was decided in 1994, cited the 1980 decision in *Summa I* for the proposition that in an action to remove a cloud upon title, it is permissible to assess as damages attorney fees, regardless of whether the plaintiff made out a claim for slander of title. 110 Nev. at 29-30, 866 P.2d at 1142.

recover as damages the expense of legal proceedings necessary to remove a cloud on the plaintiff's title.[21] These holdings are based on the Restatement (Second) of Torts, which provides the circumstances under which one becomes liable for slander of title. Specifically, section 633 of the Restatement defines "recoverable pecuniary loss" as

>(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and
>
>(b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.[22]

The clear majority rule is that attorney fees incurred in removing spurious clouds from a title qualify as special damages in an action for slander of title.[23] As stated by the Washington Supreme Court, attorney fees are permissible as special damages in slander of title actions because "the defendant . . . by intentional and calculated action leaves the plaintiff with only one course of action: that is, litigation. . . . Fairness requires the plaintiff to have some recourse against the intentional malicious acts of the defendant."[24] However, no authority appears to support the proposition that attorney fees are available as special damages in a case to remove a

---

[21]*Wright*, 342 P.2d at 457; *Dowse*, 208 P.2d at 957-59.

[22]Restatement (Second) of Torts § 633(1) (1977).

[23]*Rayl v. Shull Enterprises, Inc.*, 700 P.2d 567, 573 (Idaho 1984); *Paulson v. Kustom Enterprises, Inc.*, 483 P.2d 708, 715-16 (Mont. 1971); *Den-Gar Enterprises v. Romero*, 611 P.2d 1119, 1124 (N.M. Ct. App. 1980); *Peckham v. Hirschfeld*, 570 A.2d 663, 668 (R.I. 1990). Nevertheless, although the prevailing party in a slander of title action may recover as special damages those attorney fees and expenses incurred to remove the cloud on the title, the costs incurred to prosecute the slander of title action itself do not constitute the required special damages and are not recoverable. It is only the costs of actions taken to clear a plaintiff's title and such other expenses that are reasonably necessary to counteract the disparagement that are appropriately characterized as "special damages" for which the tortfeasor should bear liability. *See Colquhoun v. Webber*, 684 A.2d 405, 411, 413 (Me. 1996) (remand necessary where trial court erroneously computed its award of special damages based on the legal cost of prosecuting the slander of title action, instead of based on the expense of measures reasonably necessary to counteract the publication of the slander caused by the defendant's filing of spurious quitclaim deed); *Gillmor v. Cummings*, 904 P.2d 703, 708-09 (Utah Ct. App. 1995) (landowners could recover attorney fees incurred to quiet title as special damages for slander of title, but remand was necessary to determine amount of damages to which landowners were entitled).

[24]*Rorvig v. Douglas*, 873 P.2d 492, 497 (Wash. 1994) (reversing an 85-year-old precedent disallowing attorney fees as special damages in slander of title cases and adopting Restatement position).

cloud upon title when no claim for slander of title has been alleged, and in fact, authority to the contrary exists.[25]

Accordingly, our statement in *Sandy Valley* that attorney fees are available in a case "of clarifying or removing a cloud upon the title to property" and similar statements in *Summa I* and *Michelsen* inadvertently expanded the scope of real property cases in which attorney fees are available as special damages. Therefore, we retreat from these statements and now clarify that attorney fees are only available as special damages in slander of title actions and not simply when a litigant seeks to remove a cloud upon title.[26] Because the district court never found that the Daiss group slandered title to real property, no attorney fees were available in this case. Accordingly, we reverse that portion of the district court's order that awarded attorney fees to the Horgan group.[27]

## CONCLUSION

We conclude that the district court did not err in determining that the Daiss group failed to show that they acquired a portion of

---

[25]*Price v. Tyler*, 890 So. 2d 246, 250-51 (Fla. 2004) (holding that attorney fees as damages, although permissible in slander of title actions, were not allowed in a quiet title case); *Jemez Properties, Inc. v. Lucero*, 608 P.2d 157, 162 (N.M. Ct. App. 1979) (disallowing slander of title remedies, such as attorney fees as special damages, when no slander of title claim asserted).

[26]We affirm our holding in *Sandy Valley* that attorney fees as damages must be specially pleaded under NRCP 9(g). We acknowledge that the cases cited by *Sandy Valley* for the proposition that attorney fees must be specially pleaded do not directly address NRCP 9(g) and when attorney fees must be specially pleaded under this rule. *See International Indus. v. United Mtg. Co.*, 96 Nev. 150, 606 P.2d 163 (1980) (holding that when a lessor did not recover compensatory damages nor attorney fees as damages, an award of attorney fees was improper); *City of Las Vegas v. Cragin Industries*, 86 Nev. 933, 478 P.2d 585 (1970) (award of attorney fees not proper when the complaint only alleged the necessity for the services of counsel and simply requested attorney fees); *Brown v. Jones*, 5 Nev. 374 (1870) (complaint must allege with distinctness fees resulting only from dissolution of injunction). However, the plain language of NRCP 9(g) requires that "[w]hen items of special damages are claimed, they shall be specifically stated." *See also Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6 (D.D.C. 1990) (recognizing in dictum that attorney fees as special damages in a slander of title action must be pleaded with particularity); *Spencer v. Harmon Enterprises, Inc.*, 44 Cal. Rptr. 683 (Dist. Ct. App. 1965) (implicitly acknowledging that attorney fees as special damages for a slander of title claim must be specifically pleaded, and holding that pleading in that case met the required standard). Since attorney fees are items of special damages in a slander of title case, it follows that they must be specially pleaded under NRCP 9(g).

[27]We have considered the parties' other arguments and conclude that they lack merit.

the recreational easement through adverse use and that Jane Thornton Daiss, as the servient tenant, may promulgate rules for the reasonable use of the recreational easement. We thus affirm those portions of the district court's judgment. However, we conclude that the district court had no authority to promulgate rules in the first instance. Additionally, we retreat from our statement in *Sandy Valley v. Sky Ranch Estates* and earlier cases that attorney fees as damages may be recovered in actions to quiet or clarify title to real property. Such attorney fees are available in real property matters only for slander of title. Thus, attorney fees as damages were not available in this case.[28] Accordingly, we reverse those portions of the district court's judgment pertaining to the creation of rules for the recreational easement and the award of attorney fees as damages.

GIBBONS, HARDESTY, PARRAGUIRRE, DOUGLAS and SAITTA, JJ., concur.

MAUPIN, C. J., concurring:
I concur in the result reached by the majority.
I want to stress that the clarification of *Sandy Valley Associates v. Sky Ranch Estates*[1] does not preclude the prosecution of claims for attorney fees as damages in other contexts; *e.g.*, in connection with actions for malicious prosecution, abuse of process, wrongful attachment, trademark infringement, false imprisonment or arrest.

---

[28]We note that it is not clear from the record whether attorney fees may be permissible on some other basis. The district court remains free to consider such an award, if appropriate.

[1]117 Nev. 948, 955-60, 35 P.3d 964, 968-69 (2001).